**STANDIFORD CIVIC CLUB et al.,
Appellants,**

**v.**

**COMMONWEALTH of Kentucky et al.,
Appellees.**

**Arthur GOODMAN et al., Appellants,**

**v.**

**COMMONWEALTH of Kentucky et al.,
Appellees.**

Court of Appeals of Kentucky.

Feb. 10, 1956.

Petition for Modification of Opinion
Denied May 11, 1956.

Henry B. Huff, Miller, Howard & Huff, Wm. P. Friedlander, Louisville, for appellants.

J. D. Buckman, Jr., Atty. Gen., C. J. Waddill, Hugh L. Hollingsworth, Asst. Attys. Gen., for appellees.

STANLEY, Commissioner.

We have two class actions to enjoin the Commissioner of Highways of the Commonwealth and his agents from closing and obstructing certain streets of Louisville in the construction of the toll road between Louisville and Elizabethtown under authority of Chapter 177, Kentucky Revised Statutes. One action relates to what is called the Keller Avenue area and the other the Standiford area. The circuit court, with an expression of doubt, denied the injunc-

tions upon the ground that under the exigencies and circumstances the parties should seek the remedy of damages.

The Keller Avenue area includes six streets or courts of which Keller Avenue is the main one since the others lead into it. That avenue intersects Preston Street or Preston Highway, which is a thoroughfare and the principal artery of traffic. This area is blocked in on the south and west by the Standiford airfield. It is bounded on the north by Phillips Lane, to which it appears there is at present no access, and on the east by Preston Highway. So, the only way of ingress and egress is Preston Highway.

The Standiford area is bounded on the north and west by the Standiford airfield. The three outlets from this area to Preston Highway are Standiford Lane and Garden Row, which are city streets, and Standiford Avenue, which is not a public street but is dedicated by deed to the use and service of abutting property owners. The area is blocked in on three sides with Preston Highway the only way of access.

The new toll road will substantially parallel the Preston Highway and cut through both of these residential areas. This construction will cut off all means of ingress and egress to and from them. However, the plans of the toll road call for the construction of parallel service or local access streets. One will take the traffic of the Keller Avenue area to Phillips Lane on its north side and the other to Standiford Lane on its south side. It is not shown how Phillips Lane will get to the Preston Highway, but it is shown that an underpass will be built for Standiford Lane.

The closing of these streets and opening of new access ways paralleling the toll road will require everyone to travel circuitous routes from three to six to eight blocks longer in order to get to and from Preston Highway.

The appellants seriously contend that under the Constitution the Commonwealth has no power to build roads independently of the counties. Therefore, they challenge the

**500**

constitutional validity of the Toll Road Act, which is now Chapter 177, KRS. The validity of the statute was declared in Guthrie v. Curlin, Ky., 263 S.W.2d 240. But the absence of the underlying constitutional authority now argued was not considered in that case. The present argument rests on the mandatory provision of Section 177 of the Constitution, which, among other things, declared that the Commonwealth should not "construct a railroad or other highway." The terms of the amendment of 1909, which became Section 157A of the Constitution, do not expressly or affirmatively empower the state to build public roads. Strictly construed it merely authorizes the extension of the state's credit and aid to the counties for public road purposes. However, in Mitchell v. Knox County Fiscal Court, 165 Ky. 543, 177 S.W. 279, decided in 1915, the court held that the purpose and effect of the amendment of the Constitution was to nullify the prohibition of Section 177 in relation to public roads, regarding the amendment to be awkwardly expressed in order to cancel out the terms of the original section. The court concluded that by reason of the nullification of Section 177 the previous unrestricted power of the Commonwealth in relation to public roads was restored. Subsequently enacted statutes have gradually put the Commonwealth more and more into the business of independently constructing and maintaining the highways of the state. Recognition of this power will be found in a number of cases, for example, in cases approving the acquisition or construction of toll bridges. See Bloxton v. State Highway Commission, 225 Ky. 324, 8 S.W.2d 392; Estes v. State Highway Commission, 235 Ky. 86, 29 S.W.2d 583; State Highway Commission v. King, 259 Ky. 414, 82 S.W.2d 443. Recognition will be found in other cases as well.

■ We have long recognized that ownership or occupancy of premises abutting on a street or highway and the right of access to or from a public way carries with it certain property rights in and to the use thereof. If the owners may suffer special injury, they cannot be deprived of the right

without just compensation. It is the taking of property within the meaning of the constitutional provisions. Sections 13 and 242. Illinois Cent. R. R. Co. v. Ward, 237 Ky. 476, 35 S.W.2d 863; Brown v. Roberts, 246 Ky. 316, 55 S.W.2d 9; Cranley v. Boyd County, 266 Ky. 569, 99 S.W.2d 737; Wright v. Flood, 304 Ky. 122, 200 S.W.2d 117. But this property right, which generally is that of an easement, is, of course, subordinate to the rights of the public. The ground of authority for impairing or taking this property by closing or obstructing the street or highway is public convenience and necessity. Henderson v. City of Lexington, 132 Ky. 390, 111 S.W. 318, 33 Ky. Law Rep. 703, 22 L.R.A.,N.S., 20; Henderson Elevator Co. v. City of Henderson, 187 Ky. 453, 219 S.W. 809, 18 A.L.R. 983. The taking of such property right without due process of law cannot be countenanced. The statutes, KRS 177.390–177.570, Chapter 157, Acts of 1950, authorize the construction and operation of turnpike or toll road projects. KRS 177.420(2) grants power to the Department of Highways to acquire easements and other interests in land, and expressly includes the power of eminent domain. It makes applicable the provisions of the Constitution and the laws of the Commonwealth, including, of course, payment of compensation for whatever may be taken in that manner. As a specific incidence, KRS 177.430(3) provides:

"Any public highway affected by the construction of any turnpike project may be vacated or relocated by the department *in the manner now provided by law* for the vacation or relocation of public roads, and any damages awarded on account thereof shall be paid by the department as a part of the cost of such project."

■ We have added the italics. The trial court properly held the general law applies in accomplishing the vacation or closing of a city street. The state has delegated to a city of the first class the power to close or vacate its public streets and prescribed the method and procedure necessary

to do so. KRS 93.360(2). The action is to be taken by the city and abutting property owners must be made parties. However, a proper construction of the statute relating to toll roads may permit the Highway Department to do so through the exercise of its power of eminent domain, but that question is not before us in this case. As to the one street or way involved which is not a public street, the closing should have been by direct action to condemn.

In the present case the Department of Highways and its agents have brushed aside and ignored these laws. As said in Terhune v. Gorham, 225 Ky. 249, 8 S.W. 2d 431, 432: "One of the most cherished rights guaranteed by the Constitution is that 'of acquiring and protecting property.' Section 1, subsec. 5, Bill of Rights. And this cannot 'be taken or applied to public use without * * * just compensation being previously made to him.' Section 13 of the Constitution." The Department has proceeded in disregard of the prescribed legislative requirements and has made no attempt to obtain an agreement with or to give formal notice to the city or property owners as to what they proposed to do. Their action has been arbitrary. Agencies of the Commonwealth in taking private property for public use should recognize that they are amenable to the constitutional and statutory provisions the same as public service corporations which have been granted the power of eminent domain. Property owners who would be specially injured by the closing of a street or public way are generally entitled to injunctive relief. These may include not only those whose property abuts the street obstructed or closed but all others within the area whose access is impaired. Clay v. Trimble, 165 Ky. 697, 178 S.W. 1036; McCreary County Fiscal Court v. Roberts, 292 Ky. 527, 166 S.W. 2d 977; Riedling v. Harrod, 298 Ky. 232, 182 S.W.2d 770.

In the present case the circuit court had no trouble in finding that at least some of the property owners would ordinarily be entitled to enjoin the planned action of the State Highway Commission. However, the court, balancing the relative conveniences and inconveniences and the comparative injuries to the property owners and the public, denied the injunction and left the remedy of suing for damages to such parties as may be entitled to it. Herr v. Central Kentucky Lunatic Asylum, 110 Ky. 282, 61 S.W. 283; Kentucky Electric Development Co.'s Receiver v. Wells, 256 Ky. 203, 75 S.W.2d 1088.

On the one side is the nature and character of the property rights, namely, common easements of the individuals in public ways, which is, of course, different from absolute ownership of land which has been invaded, and the fact that access ways will be provided before there is a discontinuance of use of these streets. Also of important consideration is the fact that the Constitution gives property owners the right to compensation for the taking of property for a highway, whether it be before or after the taking. Terhune v. Gorham, 225 Ky. 249, 8 S.W.2d 431; Lehman v. Williams, 301 Ky. 729, 193 S.W.2d 161.

On the other side is the existence of power in the Department of Highways to condemn or to secure action by the City of Louisville to close the streets, the only difference here being that compensation would have to be paid before the act of taking; and, as it would appear, at the present time nearby construction is going on and delay in proceeding first to condemn or have the city take action would work great hardship and prevent earlier completion of the entire project.

We concur in the conclusion of the circuit court.

Judgment affirmed.