Stella SLOAN et al., Appellants,

v.

COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellee.

Court of Appeals of Kentucky.

July 1, 1966.

Daniel N. Brock, Brock & Brock, Lexington, for appellants.

Robert Matthews, Atty. Gen., William A. Lamkin, Asst. Atty. Gen., Deddo G. Lynn, Lexington, for appellee.

MILLIKEN, Judge.

The landowners have appealed a $12,775 judgment for a tract of land taken by the Department of Highways at the intersection of the Old Paris Pike (North Limestone) and North Broadway in Lexington. The County Court had awarded $18,012.80 which was paid to the landowners when the Department took possession, the Circuit Court judgment appealed here thus being substantially less than the County Court judgment entered on the appraisal by commissioners appointed by the Court. As a result, in addition to the $12,775 award for the land taken, the Circuit Court judgment required the landowners to refund the Department the difference between the two judgments plus interest from February 11, 1963, to April 22, 1964, amounting to $915.53. The landowners had insisted and persisted that the land taken was worth $40,000, and so appeal here a judgment they contend is not just compensation for the land taken.

The land condemned fronts 295 feet along the Old Paris Pike and North Broadway and the rear of the property runs about 320 feet along the Louisville & Nashville Railroad right of way. It is across the highway from the Joyland Amusement Park, though a bit closer to Lexington. The land actually taken was 1,740 square feet from a total area of 31,640 square feet, but a 205-foot long retainer wall was built along the property which reduced access to two entrances, whereas before the wall was built it was accessible from the highway along its entire frontage. The construction also resulted in the grade of the highway being raised two (2) to three (3) feet above the grade of appellants' property. There was a small home, a

small tavern, a duplex, and a market and fruit stand on the premises, but none of these was taken. The property was zoned Residence One at the time of the taking although it was in a special category designated as a nonconforming use. Attempts to have it zoned commercial were rejected because of lack of sewer lines and the curve in the highway and railroad underpass made the location hazardous for any use which generated increased traffic. Oil companies had shown an interest in the location for the erection of a gasoline filling station, dependent on rezoning to commercial.

One of the grounds urged for reversal is the refusal of the trial court to admit certain photographs into evidence which were taken during the construction and after the retaining wall was built. These photographs, of course, showed the reduction of access and the change of the grade of the highway as well as implied the nature of the damage to the remainder. The jury viewed the property, but the landowners contend that the photographs offered in evidence pointed up certain damages which might not be observed in a casual jury view.

On the other hand, the Department contends that the photographs did not represent the property either before or after the taking, were intended to impress the jury with a particular phase of the case, and were cumulative in effect because of the jury's view of the property and the testimony at the trial. The Department argues that it would have been prejudicial to have admitted them but, at any rate, it was not prejudicial to deny their admission.

We do not find it necessary to decide whether the photographs were admissible, for we conclude that their rejection was not prejudicial in view of the oral testimony at the trial and the jury's view of the property. The photographs might have tended to stress improperly the re-duction of access to the premises from the highway. The trial courts are allowed a broad discretion in admitting or rejecting them. 20 Am.Jur., Evidence, Sec. 727 and Sec. 729. Where photographs portrayed a temporary condition during construction, we have held them inadmissible as having no relevance to market value. Commonwealth, Department of Highways v. Quisenberry, Ky., 402 S.W.2d 427, decided April 29, 1966; Commonwealth, Department of Highways v. Staples, Ky., 388 S.W.2d 374 (1965). Even if we concede arguendo that the photographs here offered reflect a permanent condition so far as the retaining wall is portrayed, they stilll do not reflect the situation when the job was completed and it is that upon which the after-condemnation value of the property must be determined.

The Department invoked the statutes (KRS 177.220 through 177.310) covering limited access highways in condemning the subject parcel. The land must be valued in condemnation cases on the basis of its use at the time of taking unless it can be shown that there is an expectation or probability of other uses in the near future which would augment its value, Commonwealth, Department of Highways v. Creason, Ky., 402 S.W.2d 426, decided April 29, 1966, but loss of some access to the property is not compensable as long as the owners retain reasonable means of access as they did in the present case. Commonwealth, Department of Highways v. Lawton, Ky., 386 S.W.2d 466 (1965). In fact, it was proper for the trial court to exclude testimony as to loss of access where the owners had adequate access to the land for the uses to which it was devoted at the time of the taking as was the case here. Jennings v. Commonwealth, Department of Highways, Ky., 388 S.W.2d 133 (1965). Because of their inability to obtain rezoning of the property, its usage for a gasoline filling station was precluded before the condemnation, so evidence as to its unfitness for that purpose after the construction of the retaining wall was not proper because the

limitation on the access was noncompensable so long as the property had adequate access for its current uses, which it did in this case. The purpose of the Department in raising the grade and constructing the retaining wall was proper whether it was for channeling traffic at a bad intersection or whether it was for limiting access to the subject property, or both, for each was within the police power to make the highway safe for public use.

■ The judgment was within range of the proof, but that part of the judgment decreeing that the property owners pay the State interest at 6% on the excess of the County Court judgment over the verdict and judgment here appealed is questioned as violative of Sections 13 and 242 of the Constitution. KRS 177.087(5) directs payment of interest in such circumstances because the landowners have had use of the money. Section 242 of the Constitution declares in part:

"Municipal and other corporations, and individuals invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured or destroyed by them; which compensation shall be paid before such taking, or paid or secured, at the election of such corporation or individual, before such injury or destruction. * * *"

In the 1949 case of Barker v. Lannert, 310 Ky. 843, 222 S.W.2d 659, at page 664, we said, "It is obvious that the just compensation referred to in both sections 13 and 242 of the Constitution, since it must be paid in advance of occupation, was not intended to be the compensation finally, if ever, fixed by a jury on appeal. The only other construction to be given to the act is that the just compensation referred to in those sections is the compensation requir-

ed to be fixed before the entry of the judgment in the county court allowing the condemnor to take possession of the property." The Act referred to was KRS 416.280(6) which is almost identical to KRS 177.087 (5) authorizing the collection of interest in the case at bar. In Barker v. Lannert, only the payment of court costs by a landowner who lost his appeal was at issue, and the Court held the provision of KRS 416.-280(5) violated Section 242 of the Constitution which declared in relevant part that "The General Assembly shall not deprive any person of an appeal from any preliminary assessment of damages against any such corporation or individual made by Commissioners or otherwise; * * *." In Lannert the Court commented: "If the landowner were required at pay the court costs of any part of the procedure prescribed (in Section 242), the amount of compensation awarded him for his land necessarily would be reduced by the amount chargeable to him in the taxation of costs. To this extent, he would be denied his constitutional guarantee of just compensation under sections 13 and 242."

We do not believe the same reasoning applies to the imposition of interest on the landowners in the case at bar. In Lannert the landowner would have netted less than his just compensation, in the meaning of the Constitution, if he had had to pay the court costs. In the case at bar, the landowner received more than just compensation for the original taking in the constitutional sense, and we can see no just reason for relieving him from paying interest on his use of the excess payment. The interest may be avoided in whole or in part by not accepting the excess payment at the time of the taking, a privilege which would rarely be exercised, human nature being what it is.

The judgment is affirmed.