COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellant,

v.

Herbert C. CLEVELAND et al., Appellees.

Court of Appeals of Kentucky.

Oct. 21, 1966.

Robert Matthews, Atty. Gen., H. C. Smith, Dept. of Highways, Frankfort, Tildon H. McMasters, Elizabethtown, for appellant.

John S. Kelley, Fulton, Hubbard & Kelley, Bardstown, for appellees.

PALMORE, Chief Justice.

The appellees, H. C. Cleveland and wife, owned a 47-acre farm tract in Nelson County fronting 1243 feet on the east side of U. S. Highway 31E about 1½ miles south of Bardstown. In order to provide for a ramp leading off U. S. 31E onto the Central Kentucky or Bluegrass Turnpike, which runs in an east-west course a short distance (200 to 250 feet) north of the Cleveland property, the state highway department condemned an .82-acre strip of the farm fronting 583 feet on U. S. 31E. The strip taken is 145 feet deep at the northwest corner of the farm and narrows to 35 feet at its other extremity 583 feet to the south. The new boundary has been fenced by the highway department, but free access to U. S. 31E along the southerly 660 feet of frontage remains undisturbed. The property was being used and developed principally for the breeding of show horses. Its existing entrance was located on the 660 feet that is not affected by the taking.

A jury trial on the amount of damages resulted in a verdict and judgment for $6,000 as follows:

| | |
|---|---|
| Before value | $46,000 |
| After value | 40,000 |
| Difference | $ 6,000 |

The highway department contends the testimony of each of the landowners' valuation witnesses was devoid of probative value and should have been stricken, and that there was insufficient evidence of probative value to support the verdict.

The estimates given by the witnesses were as follows:

| | Before | After | Difference |
|---|---|---|---|
| For the owners: | | | |
| Cleveland | $56,000 | $36,000 | $20,000 |
| Lewis | 55,000 | 37,000 | 18,000 |
| English | 52,000 | 36,000 | 16,000 |
| For the department: | | | |
| Baesler | 38,000 | 36,700 | 1,300 |
| Schneider | 37,800 | 36,943 | 857 |

———◆———

It will be noted that the after-value of $40,000 found by the jury, though redounding to the benefit of the condemnor, had no basis in any of the evidence.

From his testimony there can be no mistake that Mr. Cleveland's estimate of a $20,000 loss in value was based on little else but loss of access. For example, he testified on cross-examination as follows:

Q– " * * * I will ask you to tell the court and jury what you took into account in arriving at that after value."

A– "Well, I took into account the frontage that they are taking. We bought the property as an investment and if they take the frontage, there is nothing left. The frontage is the only value about the farm."

Q– "Your after value was based primarily on loss of frontage?"

A– "Well, loss, what the farm was intended for, too. Took away from it the value of what we are doing now."

*    *    *    *    *    *

Q– "Did you base your $20,000 less market value on what specifically?"

A– "The frontage, primarily the frontage."

Q– "Primarily the loss of frontage?"

A– "Yes, primarily, yes."

Q– "That is what you based your figure of $20,000 on?"

A– "Yes, sir."

*    *    *    *    *    *

Q– "Now, is the fact that the fence was built and that thereby causes you to lose frontage here, is that what you are complaining about, sir?"

A– "Well, you can't go and come from the property because the frontage there is gone and you can't get onto the road because of that fence."

Q– "That's right. Did you take that into consideration in arriving at your value?"

A– "Well, yes."

Q– "Is that the main reason why you considered such a loss of market value?"

A– "Not altogether, no, sir."

Q– "That is one of the reasons?"

A– "One of them, yes."

Q– "Because you could not get over off your property onto 31E or to the ramp?"

A– "Yes, sir."

The taking of additional right-of-way on the east side of existing U. S. 31E did not reduce the frontage of the Cleveland place. The frontage remained virtually the same. The difference is that there is no right of access along the new frontage. But so long as reasonable access remains, that is not a compensable loss. Commonwealth, Dept. of Highways v. Denny, Ky., 385 S.W.2d 776, 777 (1964). Though Mr. Cleveland said this was not "altogether," but only "one of the reasons" for his opinion, he was unable to suggest any other except for the remark, "You can't have noise around horses." We cannot escape the conclusion that his estimate of diminution in value was so dependent upon an irrelevant factor that it should have been stricken. Commonwealth, Dept. of Highways v. Tyree, Ky., 365 S.W.2d 472, 476 (1963); West Kentucky Coal Company v. Commonwealth, Dept. of Highways, Ky., 368 S.W.2d 738, 744 (1966).[1]

The trial court did admonish the jurors not to consider "so much of this witness' testimony which raises as an element of damage his complaint that [sic] loss of frontage," but that left them nothing of probative value to consider, and no attempt was made to fill the void in the manner suggested in Shaw, and, more recently, in Commonwealth, Dept. of Highways v. Claypool, Ky., 405 S.W.2d 674, 676 (1966).

The witness Lewis disclaimed having considered the loss of "frontage" as a factor in estimating the diminution at $18,000. However, the only explanation he could give was that "the noise on the highway would scare a high bred horse and colts. * * * there is a lot of people don't like to listen to big trucks going by at night." He acknowledged that his opinion was "based primarily on the fact that it can no longer be used for horses and that the noise from the turnpike will reduce its market value." This, it seems to us, was a highly speculative and, in fact, improbable conclusion. Moreover, as no part of or connection with the turnpike other than the ramp leading off U. S. 31E adjoins the Cleveland property, the prospect of traffic noises from the turnpike would have been the same if the ramp had not been provided and this condemnation proceeding had not taken place. Whatever such noises may amount to, they do not result from this condemnation. Premised wholly on such a flimsy foundation, Lewis' testimony was practically worthless.

The witness English testified that in his opinion the value of the property had dropped from $52,000 to $36,000 because "I don't think the farm lends itself to the operation of a show horse farm. That's what it was prior to the turnpike." The best explanation he was able to give is embodied in the following questions and answers:

Q– "The jury will want to know why you arrived at that figure?"

A– "I don't feel that it, in my own words, say I think the prior—I would say a year ago that Mr. Cleveland had—six or eight months ago, Mr. Cleveland had a show horse farm; that he had a tremendous investment in it. It lent itself to people in the show horse business bringing their mares in to be bred, I think it was a quiet place. It just lent itself, was a beautiful place; that now I think that if somebody owned mares and bringing them in there the place would not be the attraction, I don't think it would—I think a lot of trucks and noise—I don't think—I think it would be a little more difficult in selling a horse person the uses of that farm for breeding and raising colts."

Q– "That is what you based your loss on?"

A– "Yes, sir "

* * * * * *

Q– "You have no information that would lead you to the opinion as an ap-

1. The situation is distinguishable from Commonwealth, Dept. of Highways v. Shaw, Ky., 390 S.W.2d 161, 163 (1965), in which the improper factor was not the primary and substantial basis of the estimate.

praiser, I'm talking about, that property located at the end of ramps on interstates and turnpikes as commercial establishments in market would enhance the value?"

A– "If you are tearing that into particular tracts, there will be no more traffic on 31E than there is now. Very little more."

Q– "This property is located at the end of the turnpike, I mean one of the ramps off the turnpike. Is that right."

A– "Yes, sir."

Q– "Mr. English, if there is no more traffic and wouldn't be any more traffic in front of that Cleveland property, how is the taking here causing him to lose his horse business? I don't quite follow that line. You said there would be no more traffic."

A– "I'm talking about north bound traffic. There will be more south bound." [2]

Q– "That increase in traffic that you are using to diminish the market value of this property?"

A– "That is just a small factor, sir."

Q– "Small factor. What is the biggest factor?"

A– "I think I have answered that." [!]

Q– "His traffic in front of the property or traffic on the turnpike?"

A– "Both, sir."

Q– "Which is going to do the greater damage to the market value of this property?"

A– "Traffic in front, sir."

Q– "That traffic in front will do the greater damage?"

A– "I feel that, sir."

Q– "So it's the traffic you are basing your loss of market value on in front of the property. Is that right, sir?"

A– "Increased traffic in front of the property."

■ There was no evidence that there will be any more or less traffic on U. S. 31E in front of the Cleveland property, and even if it were assumed that there will be, and that it will be caused by the establishment and construction of the interchange connecting U. S. 31E with the turnpike, we are not aware of any legal principle by which the state can be held responsible in damages to abutting property owners for the natural increase of traffic on its highways that occurs whenever it improves them, or constructs additional interconnections to facilitate the flow of traffic over the whole system.[3]

Like that of Lewis, the testimony of English had no substantial probative worth.

We recognize the argument that the jury discounted these extravagant estimates in awarding only $6,000. The trouble is that the evidence provides no more support for $6,000 than it does, say, for Cleveland's $20,000. When the invalid and illusory factors are eliminated, nothing but thin air is left.[4]

We cannot say the testimony of Lewis and Miller should have been stricken, but we do agree that there was not enough probative evidence to support the verdict.

The judgment is reversed with directions for a new trial.

2. The Cleveland property, however, abuts the northbound lane.

3. In Commonwealth v. Elizabethtown Amusements Inc., Ky., 367 S.W.2d 449, 452 (1963), it was held that increased *proximity* of the highway may be considered as an element of diminution, but increased *use* is a different matter. In this connection, see also Commonwealth, Dept. of Highways v. Curtis, Ky., 385 S.W.2d 48, 51 (1964), and Commonwealth, Dept. of Highways v. Carson, Ky., 398 S.W.2d 706, 707 (1966), in which traffic noise is recognized as a relevant factor. However, both cases involved the location of a *new* highway *through* the property affected by the condemnation.

4. Obviously that is where the jury must have reached in order to get its after-value figure of $40,000.