**COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,**

**v.**

**Genevia HESS, and Bank of Williamsburg, Appellees.**

Court of Appeals of Kentucky.

Oct. 27, 1967.

Concurring Opinion Nov. 17, 1967.

---

4. In which event the stricken testimony of Judge Bennett would, of course, have been competent.

Robert F. Matthews, Atty. Gen., H. C. Smith, (Dept. of Highways) Frankfort, Ben D. Smith, Smith & Blackburn, Somerset, for appellant.

C. B. Upton, Williamsburg, for appellees.

PALMORE, Judge.

Incident to the construction of Interstate Highway 75 the appellant highway department in this proceeding condemned 3.2 acres of the appellee Genevia Hess' 84-acre farm located on U. S. Highway 25 near Williamsburg, in Whitley County. The department appeals from a judgment entered pursuant to a verdict awarding the landowner $6,000, based on a before-value of $15,500 and an after-value of $9,500.

Grounds on which it is contended the judgment should be reversed are: (1) The award was excessive and not supported by sufficiently probative evidence; (2) Improper questioning by counsel for the landowner prejudiced the jury; and (3) The court erred in permitting the county judge and county court clerk to testify as valuation witnesses for the landowner. We shall discuss them in reverse order.

On the last point the arguments are that county judges and county court clerks are officers of the Commonwealth and should not be allowed to appear as witnesses against it; and that the county judge, in whose court the proceeding originated and who appointed commissioners and entered a judgment reflecting their award of $3100, should be estopped to testify contrary to the judgment of his own court.

No authority is cited for the proposition that an officer of the public cannot testify against it. Barring those situations in which privileged communications may not be divulged, our view is that any person whose testimony is otherwise relevant and competent and may assist in arriving at the truth can testify for or against any party.

If the county judge were required to perform a fact-finding function in determining the amount of compensation to be awarded in the county court, there might be good reason for a policy that would forbid his impeaching his own verdict, but that is not the case. Under KRS 177.083 and 177.086 he merely appoints three disinterested housekeepers for that purpose and is limited to finding that their report conforms to the statute. He has no discretion to modify or reject their award be-

cause the amount does not accord with his opinion. His duties in this respect are purely mechanical. Though we do not encourage the practice, we perceive no reason why he should be disqualified as a valuation witness when the litigation proceeds to a trial in the circuit court.[1]

■ With respect to the interrogation of certain of the Commonwealth's witnesses by counsel for Mrs. Hess, it does appear that many of the questions were more testimonial than inquisitive, and more argumentative than appropriate. Whether prejudice resulted from it is doubtful, as it would seem more likely that the average juror's sympathy under such circumstances would favor the unfortunate witness. Be that as it may, the record reflects that in most of the cited instances the trial court sustained objections and admonished the jury in the customary manner. If counsel for the Commonwealth felt that opposing counsel's persistent transgressions in this regard reached the point at which the jury was likely to be prejudicially affected, the proper avenue of relief was a motion to discharge the jury. No such motion was made.

In both Byrd v. Commonwealth, Ky., 283 S.W.2d 191, 194 (1955), and Thomas v. Commonwealth, 196 Ky. 539, 245 S.W. 164, 166 (1922), the defendant objected to improper argument by opposing counsel and the court duly admonished the jury to disregard the argument, but the defendant did not move to discharge the jury, and it was held that the court had done all it had been asked to do, and that a failure to discharge the jury when there is no motion for such action is not an error. These were criminal cases, but the reason for the rule applies equally, if not more strongly, in a civil trial. Cf. Lawler v. Copelin, Ky., 258 S.W.2d 913, 915 (1953); Moore v. Lyons, Ky., 386 S.W.2d 717, 719 (1965); Standard Sanitary Mfg. Co. v. Brian's Adm'r, 224 Ky. 419, 6 S.W.2d 491, 493 (1928).

I–75 is a limited access highway. In Whitley County it follows generally the same path as U. S. Highway 25. Before the taking Mrs. Hess' property fronted 255 feet on U. S. 25. As best we can tell from the record, which contains the wrong map, for all practical purposes her frontage on U. S. 25 has been eliminated, and the driveway from a dwelling house located on the remainder tract to a new access road is less advantageously situated than was the original driveway leading directly to U. S. 25.

Robert Knight, a real estate appraiser employed by the department, testified that the highest and best use of the property before the taking was for farming and that it contained about 10 acres of tillable land with a frame dwelling and several outbuildings. No buildings were taken. In his opinion the market value was $15,500 before the taking and $14,500 afterward. He cited as comparable a 1958 transaction in which Mrs. Hess had sold 7.5 acres off the rear of the property to a lumber company for $1,000, a 1959 sale of seven acres nearby (but not fronting on the highway) at $3,700 for strip-mining purposes, and a 1963 sale of 35 acres "across the road" at $25,000 for industrial purposes. It was brought out on cross-examination that several commercial properties were situated in the near vicinity.

Ray Wells, a district right-of way agent for the department, using the same comparable sales, testified to a before-value of $15,500 and an after-value of $14,200. His evidence was much the same as the witness Knight's except that he was of the opinion that with some filling and grading the front part of the property would have been adaptable to use for a residence or small business.

Valuation testimony given in behalf of the landowner was as follows:

Edward Moses, county welfare director, who buys and sells real estate and makes

---

1. As a matter of fact, even the commissioners are allowed to testify. Cf. Commonwealth, Dept. of Highways v. Evans, Ky., 361 S.W.2d 766, 770 (1962).

appraisals for a local bank, insurance agencies, loan companies and other individuals and agencies, and who owns seven parcels of real estate in Whitley County, was of the opinion that the Hess property was worth $15,000 before and $6,500 after the taking. He said that vacant property in Williamsburg is scarce and that the outlying area to the south of the city, where the tract in question is located, has been increasing in demand and value since 1958. In his opinion the sale made by Mrs. Hess in 1958 was not comparable because that property was several hundred feet back from the highway. He thought also for the same reason that the 1959 sale of 7 acres for $3,700 was not comparable.

Everett Rains, county court clerk and former sheriff, is a farmer and trader by profession, lives in the neighborhood and has been familiar with the property in question all his life. He has had experience in buying and selling land and observes the prices at which real estate in Whitley County is bought and sold. It was his opinion that the Hess tract was worth $15,200 before and $8,250 after the taking, and that the 1958 and 1959 transactions cited by the department's witnesses were not comparable.

William Morton Bennett, the county judge, grew up on a farm adjoining the Hess place and has been well acquainted with it all of his life. He has had extensive experience in the purchase and sale of real estate and now owns 23 dwellings and a store building in the county. He testified that the value of property in the area in question had been on the increase, to the extent of four or five times its former value, prior to the taking, by reason of increasing population. His opinion was that the Hess place was worth $16,-000 before and $9,000 after the taking. He said the most valuable part was taken, but was not able to give any specific case in which property located in the same vicinity along U. S. 25 had brought $2,000 per acre.

It will be noted that the principal differences between the testimony of the department's appraisers and the witnesses for the owner lay in their opinions as to the value of the remainder left after the taking and in the fact that the former relied on comparable sales whereas the latter did not.

■ Since the witnesses substantially agreed on the before-value, the alleged comparable sales can have no decisive significance except as to the after-value. The 1959 purchase for strip-mining purposes simply is not comparable without a showing that the Hess property can be strip-mined. Certainly the highway frontage tract sold in 1963 for industrial purposes cannot be equated with the Hess property as it was left after the taking. If the 1958 sale by Mrs. Hess be given the probative weight claimed by the witnesses who cited it as comparable, the value ascribed by the jury to the property remaining after the taking may be somewhat low, but it is not so grossly out of line that a court would be justified in repudiating the verdict.

In conclusion, we are unable to say that the amount of the award appears excessive at first blush.

The judgment is affirmed.

WILLIAMS, C. J., and MILLIKEN, EDWARD P. HILL and STEINFELD, JJ., concur.

## CONCURRING OPINION

OSBORNE, Judge.

This case and Commonwealth, Department of Highways v. Rowland, et al., Ky. 420 S.W.2d 657 were stated and voted on as companion cases. In my opinion they share a common fault which this court should immediately proceed to correct. In both cases the properties involved were situated upon U.S. Highway 25 near Williamsburg in Whitley County. The properties were

basically one-family mountain farms of modest value. However, in recent years, being located upon a major highway with unrestricted access to the highway and near a residential community they have taken on added value. This value results from the fact that the property is adjacent to Highway 25 and enjoys unlimited access to that highway making the property desirable for both residential and business purposes. The value of the property being greatly enhanced as a result of this adjacency it was therefore greatly diminished when I–75 was built where it cut off much of the property from free access to U.S. 25, leaving it with only limited access to I–75. We have held that one can not recover for loss of access where the property is reduced from a status of unlimited access to one of limited access, if the owner still has "reasonable" access. Rowland v. Commonwealth, Department of Highways, Ky., 414 S.W.2d 880 and Commonwealth, Department of Highways v. Smith, Ky., 413 S.W.2d 72. I can see no real distinction between this case and those above cited. In both instances the question is whether or not to compensate the owner for diminution in value resulting from loss of adjacency to a free access road. Whenever property derives a portion of its value from the fact that it is adjacent to a free access road it does not seem reasonable to deny recovery for diminution in value occasioned by altering the highway (either widening or raising) thereby limiting its access and allow recovery such as we are doing here where the free access to the old highway is abolished and replaced by limited access to a new highway. The owner of property either has a compensable interest in its adjacency to a highway or he does not. If he does, then any act that diminished his access should be compensable. If he does not, then the state should be permitted to remove the highway without paying compensation. If loss of access is not a compensable item then the award in this case should be set aside. It is a matter of common knowledge that mountain farmland is not worth $2000 per acre, therefore

it becomes obvious that we are compensating the owners for their loss of adjacency to an open access highway.

I concur in the action of the majority affirming the judgments in these cases because I believe the owners have a property interest in the adjacency of their land to an open access highway and, therefore, I would compensate them for any loss of value suffered as a result of curtailing or limiting such access. I would overrule those cases holding otherwise. As the matter now stands, we are compensating some and denying others for identically the same loss. The rule denying recovery for access has its genesis in the decisions of this court. See Wright v. Flood, 304 Ky. 122, 200 S.W.2d 117, wherein a county sought to close a rural road. Flood claimed he was damaged by the closing and insisted he was entitled to compensation under sections 13 and 242 of the Constitution. This court held:

"A careful reading of the evidence convinces us that there was no special damage to appellee's property differing in kind and not merely in degree from that which might have been sustained by the general public when this section of the road was discontinued. That part of the road contiguous to appellee's property which connects his private entrance with the Cropper-Cull road which in turn connects with all of the principal public roads in the vicinity was not discontinued * * *.

"'* * * the general weight of authority in requiring compensation to an owner of private property for a taking or damage under similar constitutional provisions is that the damage suffered must be to contiguous property and the direct and immediate consequence of the act complained of. Recovery cannot be had for remote or contingent injury.'"

It will be noted that the specific holding is to deny recovery because damage suffered was not to "contiguous" property. There seems to be little doubt but what damages would have been allowed had the property

been contiguous. The question was next before this court in Ex parte Commonwealth of Kentucky, Ky., 291 S.W.2d 814. This case like the Flood case was an action to close a rural road. On the question of damages this court said:

"This brings us to the question of liability for damages. We think it is fairly well established that a property owner on a road proposed to be closed is entitled to damages (for depreciation in the value of his property) only when the closing of the road will deprive him of his sole or principal means of ingress and egress. Wright v. Flood, 304 Ky. 122, 200 S.W.2d 117; Standiford Civic Club v. Commonwealth, Ky., 289 S.W.2d 498."

The holding here is that a property owner has no compensable property right in the road to be closed even though his property be contiguous to the road, if he has another means of ingress and egress. It is interesting to note that the court cites the Flood case as authority for its holding, when the Flood case actually stands for the opposite. Here we have witnessed the disappearance of the constitutional right of the citizen to be compensated for property taken for public use. The right seems to have vanished like the rabbit from the magician's hat, now you see it, now you don't. As if to further allay any doubt as to whether the right had been completely annihilated, the court again wrote in Department of Highways v. Jackson, Ky., 302 S.W.2d 373:

"It is argued by amicus curiae that if a landowner suffers a depreciation in the value of his land as a result of the closing of a road, he necessarily has sustained a property damage, which is damage differing in kind from that suffered by the public generally, and for which he should be compensated, regardless of whether he continues to have a reasonable way of ingress and egress. The simple answer to this is that the enhancement in value of land attributable to the mere convenience of the routes of travel which it enjoys (whether such convenience is from the extent to which the surface of the road is improved or from the geographical location) is something which does not inure to the landowner as *property*."

The rule has been reaffirmed and repeated many times since and today remains as finalized in this case, to wit, a contiguous property holder has no financial interest in the adjacency of his property to the highway and can not recover from its alteration, abandonment or closing so long as he is left "reasonable" access to the road system generally. Commonwealth, Department of Highways v. Rowland, Ky., 414 S.W.2d 880; Commonwealth, Department of Highways v. Smith, Ky., 413 S.W.2d 72; Commonwealth, Department of Highways v. Cleveland, Ky., 407 S.W.2d 417; Sloan v. Commonwealth, Department of Highways, Ky., 405 S.W.2d 294; Commonwealth, Department of Highways v. Lawton, Ky., 386 S.W.2d 466; Commonwealth, Department of Highways v. Merrill, Ky., 383 S.W.2d 327; Commonwealth, Department of Highways v. Sherrod, Ky., 367 S.W.2d 844; Commonwealth, Department of Highways v. Carlisle, Ky., 363 S.W.2d 104; Department of Highways v. Jackson, Ky., 302 S.W.2d 373 and Wright v. Flood, 304 Ky. 122, 200 S.W.2d 117.

In the case now before us we are tacitly permitting recovery for loss of access or adjacency whichever you choose to call it. Otherwise there would be no justification for the size of the verdict. What we have said could not be done by direct means, we now permit to be done by indirect means. Our very actions amount to a confession that the rule announced in Ex parte Commonwealth, supra, is wrong. Therefore, that case and those following should be overruled. A property owner has a pecuniary interest in the adjacency of his property to a public highway for which he should be allowed to recover. The rule is stated in 26 Am.Jur.2d 929, § 241 as follows:

"The general rule is that persons specially injured by the vacation of a

street or highway are entitled to recover such damages as they may sustain, even in the absence of a statute providing therefor. The discontinuance of a public street upon which a parcel of land abuts, if such street constitutes the only means of access to the parcel in question, would in legal effect be the same as the construction of an impassable barrier around such land, and discontinuance in such a case is generally held to constitute a taking of the property so cut off, inasmuch as total deprivation of access is equivalent to a taking, especially when the easement of access to the street is recognized by the substantive law of the state."

For the foregoing reasons I concur in the results reached by the majority opinion but not for the reasons stated therein.