COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellant,

v.

Noble WHITE et al., Appellees.

Court of Appeals of Kentucky.

Nov. 24, 1967.

Robert Matthews, Atty. Gen., H. C. Smith, Asst. Atty. Gen., Frankfort, Ben D. Smith, Somerset, for appellant.

C. B. Upton, Williamsburg, for appellees.

MILLIKEN, Judge.

This appeal involves a highway right of way condemnation action brought in Whitley County by the Department of Highways to acquire right of way for construction to a section of I–75 near Williamsburg.

Appellee Noble White's property consisted of a tract of about eight acres of level land on the west side of U. S. 25 about two miles south of Williamsburg in a neighborhood of small farms and low to modest cost dwellings. The tract was improved with a twelve unit motel, about twenty years old, and a combination dwelling and restaurant. The motel units were of wood frame construction with brick fronts and contained all the modern conveniences. Behind the motel units were four utility houses for water heaters, a shed, 24 x 8 feet, a well house, 6 x 6 feet, a chicken house, 6 x 8 feet, and a garden. The rear of the tract was woodland.

The Commonwealth condemned 4.72 acres which included the motel and all the improvements. The land taken was a strip of approximately 400 feet running north to south through the heart of the property for its entire length. There were two parcels remaining, one on the west which was woodland and contained 2.4 acres, and one on the east which contained .78 acres and had frontage on U. S. 25 west. The Highway Department excepted to the valuation placed on the property by the commissioners in the county court, but on the trial in the circuit court the jury returned a verdict of $62,000.00,

just $400.00 less than the valuation placed on the property by the commissioners.

The first point argued on appeal by the Highway Department is that the verdict was palpably excessive and not supported by evidence of probative value.

At the trial, the Department produced three qualified real estate appraisers who valued the loss at about $30,000.00. These witnesses based their findings on comparable sales of motels in the general area plus local sales of unimproved tracts of land analogous in size and location to appellee White's land. All three witnesses were Highway Department employees acquainted with property values in the area.

The witnesses for the appellee included Noble White himself, the president of the Farmers National Bank in Williamsburg, a local realtor, and a part-time realtor. All these men had lived in Whitley County or Williamsburg for most of their lives and stated they were thoroughly familiar with local land values. For the most part, these appraisers for White relied only on their experience in real estate in arriving at their estimates. They gave, with one exception, no comparable sales or other factors as a basis for their opinions, but relied largely on their knowledge of values in the community. The only comparable sale given by them was the Pleasant View Motel sale which occurred in 1954 with a sale price of $50,000.00. This motel was situated only four miles from Williamsburg, but was generally conceded to be better structurally than Noble White's motel besides containing more units and a bigger restaurant. The Department considered this sale to be too far back in time to be meaningful and only introduced comparable sales occurring during or after 1960. All appraisals mentioned in this case were made in the Summer and early Fall of 1963; the trial was in October of 1965 and the judgment entered November 22, 1965.

■ We have no trouble with the qualifications of the witnesses for both sides; they were qualified. There was little difference of opinion between the litigants as to the after-value of the property, the Department's highest after-value being $3,000.00 and the landowner's highest after-value being $2,600.00. It was in estimates of the before-value where the difference of opinion arose, two of the Department's witnesses placing it at $30,000.00 and one estimating it at $34,000.00, while three of the landowner's witnesses placed it at $65,000.00 and the landowner himself assessed it at $76,000.00.

It was brought out in cross-examination of the landowner that he had bought the property in 1952 for $18,400 and that he had modernized it to such an extent that he estimated the cost of the improvements (if the labor of his father, brother and himself were considered) would amount to $56,000.00, and that was one reason why he placed a before-value of $76,000.00 on his property. He had installed central heating and modern plumbing and sewage system, had combined the separate units and had run a brick wall over 229 feet in length across the front of them in line with his restaurant, which transformed it into a motel rather than the unconnected units it formerly was. The photographs introduced in evidence indicate that the property was well maintained, and afforded modern accommodations for the traveling public.

■ We do not find here the injection of improper factors into the evidence for the consideration of the jury, but rather an out-and-out difference of opinion between the qualified appraisers for the litigants as to what the motel of six double units and six single units together with the restaurant and outbuildings and land taken was worth at the time of the taking. The appraisers for the landowner visited each and every room in the motel, observed its condition, and expressed their opinions thereafter on the basis of their observations and established knowledge of property values in the community, sedu-

lously refusing on cross-examination to break down their appraisals on a unit by unit basis, declaring that that was not the method they had used in appraising it. They also testified to the steady increase in property values in the area and said they had not considered replacement cost in making their appraisals. We think there was adequate evidence to support the jury's verdict.

■ The Department contends that counsel for the landowners made improper statements and asked improper questions which prejudiced the jury. He may have fudged a bit in the heat of combat, but if he did the court expunged its effect by a number of admonitions. Much of the complained of interrogation was on cross-examination where counsel has a rather wide latitude in testing the accuracy of opponent's witnesses and, in this particular case, in testing witnesses who had testified to comparable sales. There are so many factors involved in determining comparability such as the construction and condition of the improvements on the land sold, its location, the time of sale, and economic conditions at the time compared to conditions at the time of taking, that a Scotch judge might rule them out as not comparable where an Irishman would let them in. At best and at most the testimony here as to comparables was some slight guide to the jury in reaching its verdict; it could not be determinative, for there was other evidence to consider. The Department did not move the court to discharge the jury, but even if it had we do not believe its motion would have been granted, for the trial court, it appears to us, vigilantly controlled the progress of the trial by his admonitions and comments. Commonwealth of Kentucky, Department of Highways v. Hess, Ky., 420 S.W.2d 660, decided October 20, 1967, involving trial of a condemnation action in this same trial court.

■ Two days after the trial one of the jurors bought a portion of the remaining land on the back of the property for $350.00, an act to which the Department ascribes an evil portent. The juror swore that he had been looking for a small parcel of land for a small home and did not know that this parcel was available until he discovered it at the trial. White, the landowner, had refused an offer of $200.00 for it from another individual prior to the trial, had asked $350.00 for it then, and sold it to the juror for his asking price after the trial. We think the trial judge correctly refused to grant a new trial because of this occurrence.

The judgment is affirmed.

All concur.