COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellant,

v.

Chester LAYNE and Jean Layne, wife,
Appellees.

Court of Appeals of Kentucky.

Sept. 28, 1973.

Rehearing Denied Jan. 4, 1974.

Jim Robinson, Gen. Counsel, Dept. of Highways, Frankfort, Edmond H. Tackett, Pikeville, for appellant.

Clifford B. Latta, Prestonsburg, for appellees.

OSBORNE, Justice.

This is a highway condemnation proceeding in which the jury awarded $85,000 for 1.73 acres of what could best be described as un-unique land.

The testimony of all of the witnesses concerning value and the findings of the jury are set out in Appendix A of this opinion. A rough plat of the land is attached as Appendix B to this opinion.

Appellees, Chester Layne and wife, Jean Layne, owned 20.97 acres of land in Floyd County, Kentucky which was divided by old highway 23. 5.31 acres of this tract lay to the south of highway 23 extending from the highway to a river. This 5.31 acres was in no way affected by the condemnation proceeding as the south boundary of the new highway followed the south boundary of old highway 23, except to the extent that the Highway Department is limiting the right of access to this south tract onto the new highway. All of the 1.-73 acres comes from that tract lying north of old highway 23. The only improvement involved is a shed or old storebuilding which Layne used in his business as a storehouse. This building is of frame con-

struction, measuring 28 x 48 feet. There are one or two small rough type structures of no significant value. The Laynes' residence which is an eight-room house is in no way affected by the condemnation except that the land area between the house and the public road is somewhat diminished.

The Commonwealth of Kentucky has appealed from the judgment of the circuit court on two grounds which we believe to have merit. First, they contend that the court improperly permitted the landowners' evaluation witnesses to base their damages upon the fact that the Highway Department was limiting the access of that part of the property lying to the right or south of highway 23. They further contend that the verdict is so excessive as to demonstrate that it was arrived at because of passion or prejudice.

The record in this case is a classical example of how a condemnation proceeding should not be tried. In order to detail our conclusions in this respect we will point out witness by witness what happened, along with our summary of what went wrong.

The first witness called was Garry Endicott who was a land appraiser for the Kentucky State Highway Department. Mr. Endicott testified that in his opinion the tract as a whole had a value of $70,000 before the condemnation and $50,000 afterwards. He supported this testimony by reciting comparable sales that had taken place in the vicinity. Whereupon, appellees' attorney, the Honorable Clifford B. Latta, proceeded to cross-examine the witness. Whereupon, he asked the witness if he had knowledge of the square-foot price of property selling in Rolling Acres subdivision.[1] The witness testified that he

did and that some lots had sold from 60 cents per square foot down to 20 cents per square foot, but it averaged around 34 cents. Mr. Latta then asked if the witness considered the 5.31 acres to the right of the road as being comparable to the Rolling Acres property. The witness testified that he considered the entire tract to be of a value commensurate to the entire Rolling Acres tract, but in testifying as to the sale of lots in Rolling Acres he stated as follows:

"A—Well, I've checked on the Rolling Acres sales since then and if you have all the level land in the world and if you don't have a market for it you can't sell it. So I checked on it and there has only been one sale since the auction. So having the property and being able to sell it is two different things."

Following this, counsel for the landowners continued to pursue the subject to the extent of asking how much 173,900 square feet of land would be worth at 60 cents per square foot. This was objected to by the appellant and the objection was overruled. Following the objection Mr. Latta continued to pursue the subject and succeeded in establishing that if the property to the south of the highway was divided into lots and sold at 60 cents per square foot, it would bring $104,340.00 and a blacktop road could be built to it for $34,000.00.[2] Again, attorney for the Department of Highways objected and this was overruled by the court. The transcript of evidence reveals that the examination in this vein and upon this subject continued for page after page over the objections of the attorney for the Department of Highways. At the conclusion of this witness' testimony an objection was made by attorney for the Department of Highways, which was overruled.

---

1. Rolling Acres is a residential subdivision somewhere in the community in which lots were sold at sometime by public auction. This record does not reveal exactly where Rolling Acres is located relative to the property in litigation nor does it reveal when the auction was held.

2. The evidence as to a road does not establish that it would be such roads as to convert the property into a subdivision. It was only established that $34,000 would buy a "whole lot of blacktop".

The next witness called by the appellant was Claybourne Stephens who was also a land appraiser for the department. After being qualified, he testified as to his opinion of the value of the property before and after the condemnation and supported his opinion with comparable sales. Again, attorney for the landowners on cross-examination went into the value of the land south of the highway for residential or subdivision purposes and again injected into the record the cost of developing it as a subdivision such as Rolling Acres, all over the objection of attorney for the Highway Department. The following is an example of questions on examination:

"Q—Now, would this land in your opinion, I'm talking about the right-hand side, having been developed, sufficient blacktopped streets, would it command a price commensurate with what the better property in Rolling Acres did, the sale in Rolling Acres sub-division?"

An objection was made to this question and overruled by the trial court, following which counsel for the landowners again went into the sale of property in Rolling Acres for 60 cents a square foot and pursued the subject through several pages, some of which objections were sustained and some overruled.

The next witness to testify was Robert Daniels. He testified that he was a professional appraiser, gave his opinion of the value of the property before and after the condemnation and supported his opinions by comparable sales. He was then cross-examined by attorney for the landowners who immediately opened the subject of the desirability of the land lying south of the road for subdivision purposes, along with what lots in Rolling Acres sold for per square foot.

This witness closed the case for the Commonwealth whereupon the landowners called their first witness, Joe Weddington, who qualified as an insurance salesman and real estate appraiser. After describing the property under question and introducing photographs of the property, the witness was permitted to testify that the property lying south of the road had lost its highest use as commercial property and is now only suited for residential purposes because it had lost a portion of its access to old highway 23. He testified that in his opinion prior to the condemnation proceeding the entire tract was worth $187,000. Then he was asked:

"Q—Again based upon your knowledge of the value of land in the vicinity of the subject property, in considering the changes proposed to be made and the changes has to be made today, do you have an opinion you can state is the fair and reasonable market value of the tract remaining after the taking on June 22, 1970?"

In response to this question he testified that the value after the taking was $97,500. Attorney for the Highway Department moved the court to strike this testimony because it was obvious the difference in values testified to by the witnesses was occasioned by virtue of the loss of access of the property south of the highway. This was overruled by the trial court. A motion was made to strike the testimony for the same reason, which was likewise overruled by the trial court.

The next witness to appear was Haskel Stratton who was qualified as a manufacturer's representative of Standard Brands, a licensed bonded auctioneer, a dealer in real estate and general trading, who testified that he was an appraiser for the Eastern District of the U.S. Court. Attorney for the landowners before questioning this witness at all about the property in litigation, brought out the fact that the witness was an auctioneer when lots in Rolling Acres were sold and that these lots brought $185,000 and that this was approximately half of the lots in Rolling Acres. He testified that in his opinion the proper-

ty prior to the condemnation proceedings was worth $187,500 and afterwards was worth $96,500. His explanation of the decrease in value is contained in the following question and answer:

"Q—Based upon your knowledge of land and market conditions in the area, what in your opinion was the highest and best use of the property immediately before the taking and immediately after the taking?

A—Well, immediately before the taking it was commercial and residential. I would say immediately after the taking would be residential and by that the frontage is being taken. The only highway frontage that is left on Mr. Layne's property is a 12 foot roadway and the rest of it has been removed from highway frontage."

Again, attorney for the Highway Department moved to strike the testimony on the ground that it was based upon an improper factor (loss of access) and further moved the court to admonish the jury not to consider the value testimony and require the witness to reappraise and revise his estimate of value and not to consider these improper factors. All objections were overruled.

When cross-examined by attorney for the Highway Department relative to his method of computing the damages, Stratton testified as follows:

"Q—Mr. Stratton, did I understand that on the property that lies to your right as you go from Prestonsburg toward Pikeville that you indicated that it contained a little bit more than five acres?

A—Yes, sir.

Q—That property actually isn't disturbed as you understand it?

A—No, sir. There wasn't any of that property taken but by the building of this highway it has taken the frontage from this property as highway frontage.

Q—And you considered that in arriving at your figures?

A—Yes, sir. I considered all aspects. I took the property as a whole before and after.

Q—That's one of the factors in arriving at your total difference in value?

A—Yes, sir."

Following which counsel for the Highway Department again moved to strike the testimony, which was overruled.

It would be futile to attempt to rabbit-track the multiple trial errors committed in this case, therefore we will simply state a few basic rules of law which seem to have been completely ignored. First, this property was already physically divided by U.S. Highway 23; there was nothing taken from the property lying south of the road but access; there is no proof in this record whatsoever but what the access left to the property after the condemnation proceeding was reasonable; therefore the landowners can not recover for loss of access to the property lying south of U.S. Highway 23. All testimony based upon the damage to this tract as the result of loss of access should have been excluded, see Commonwealth v. Rosenblatt, Ky., 416 S.W.2d 754. Furthermore, we have clearly stated in Paintsville-Prestonsburg Airport Bd. v. Galbraith, Ky., 433 S.W.2d 868, that a landowner is not entitled to recover the value of his property for subdivision purposes merely upon the possibility that the tract may someday be developed for residential purposes. This record is completely devoid of any proof that there was a market in the area for residential lots, or that there was any plan to subdivide this property in the immediate future, therefore, the action of the trial court in permitting the witness either on direct or cross-examination to testify to its value

as subdivided property, upon a square-foot basis, was clearly erroneous.

■ We have heretofore pointed out that where there is a mingling of compensable and noncompensable elements pervading the entire procedure and it is not possible to separate the wheat from the chaff, then the evidence lacks sufficient probative value to sustain the verdict, see Commonwealth, Dept. of Highways v. Diuguid, Ky., 469 S.W.2d 707 (1971). We believe that situation clearly prevails in the proceeding here before us.[3]

■ In addition to the foregoing reasons for reversal of this case there is the additional issue of excessiveness. Photographs of the entire tract along with detailed photographs of the improvements are included in the evidence. An examination of these photographs reveals that no reasonable person could accept the fact that the damage to the landowners in this case could be anywhere near $85,000. The land area taken is 1.73 acres. The damage that removal will cause to the remainder of the land is minimal. The improvements are of modest value. This court has exerted a consistent and conscious effort to avoid setting aside verdicts in condemnation cases because of excessiveness, however, there must be a point beyond which we can not

remain passive. The funds being expended are those of the taxpaying public. Our hopes have been that the jury system, when properly implemented, would be sufficient to protect these funds. However, when it appears from an examination of the record that this system has not properly functioned and that the verdict is so high as to demonstrate that it was arrived at because of passion or prejudice we can no longer remain silent. We believe the verdict in this case falls in that category.

Judgment reversed.

PALMORE, C. J. and JONES, MILLIKEN, OSBORNE, REED and STEINFELD, JJ., sitting.

All concur, except PALMORE, C. J., who concurs in result only.

APPENDIX A.

FOR APPELLANT:

| WITNESS | BEFORE | AFTER | DIFFERENCE |
|---|---|---|---|
| Endicott | $70,000 | $50,000 | $20,000 |
| Stephens | 64,000 | 43,000 | 21,000 |
| Daniels | 65,000 | 40,000 | 25,000 |
| FOR APPELLEES: | | | |
| Weddington | 187,000 | 97,500 | 89,500 |
| Stratton | 187,500 | 96,500 | 91,000 |
| JURY: | | | |
| Verdict | 126,000 | 41,000 | 85,000 |

3. The author of this opinion and Justice Reed have not agreed with the majority of this court that loss of access is not a compensable item, see Commonwealth, Dept. of Highways v. Hess, Ky., 420 S.W.2d 660, Commonwealth, Dept. of Highways v. Carlisle, Ky., 442 S.W.2d 294, Commonwealth, Dept. of Highways v. Diuguid, Ky., 469 S.W.2d 707. Even though the court has been divided a majority has continuously held that loss of access is not compensable.

See Appendix B on next page.

APPENDIX B

Total area 20.97 acres.

Land taken 1.73 acres.

Land remaining after taking
        13.93 acres in north tract
        5.31 acres in south tract

Witnesses referred to south
tract as "right" side and
north tract as "left" side.

"Left Side"
13.93 Acres

New right-of-way line

OLD HIGHWAY 23

373 Feet
(approx.)

5.31 acres
right side

[A9198]                RIVER