# In re Charles Wilkinson

[678 A.2d 1257]

No. 95-156

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed April 12, 1996

*Robert Appel*, Defender General, and *Judith A. Ianelli*, Prisoners' Rights Office, Montpelier, for Petitioner-Appellant.

*Dan M. Davis*, Windham County State's Attorney, and *Christopher C. Moll*, Deputy State's Attorney, Brattleboro, for Respondent-Appellee.

**Johnson, J.** Petitioner appeals the superior court's denial of post-conviction relief, arguing that the court erred (1) by permitting the judge who presided over defendant's original trial to testify as the State's expert witness; and (2) in finding that petitioner was not prejudiced by defense counsel's failure to adequately impeach the State's expert witness. We reverse, and remand for a new post-conviction relief hearing.

## I.

In 1990, following a trial by jury, petitioner was convicted of both sexual assault on a minor and lewd and lascivious conduct. On appeal, this Court upheld the conviction. *State v. Wilkinson*, No. 90-418 (Vt. Oct. 9, 1991) (mem.). Petitioner then moved for post-conviction relief, pursuant to 13 V.S.A. § 7131, claiming that he had been denied effective assistance of counsel at trial. Specifically, petitioner argued that defense counsel did not impeach the State's expert witness with allegations of past professional misconduct and perjury, and that counsel failed to object when the same expert testified that the victim had been sexually abused by petitioner. The latter claim is based on our decision in *State v. Weeks*, 160 Vt. 393, 403, 628 A.2d 1262, 1267 (1993), where we held that the admission of expert testimony identifying the defendant as the perpetrator and implying that the child victim was telling the truth was plain error.

Defendant had a right, under both the United States and Vermont constitutions, to reasonably effective assistance of counsel. *In re Trombly*, 160 Vt. 215, 217, 627 A.2d 855, 856 (1993). To challenge his conviction on the basis of ineffective assistance of counsel, defendant must show by a preponderance of the evidence (1) that defense counsel's performance fell below the prevailing standard of competency, and (2) that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 217-18, 627 A.2d at 856; *State v. Bristol*, 159 Vt. 334, 337, 618 A.2d 1290, 1291-92 (1992).

At the post-conviction relief hearing, petitioner presented two witnesses. The first, attorney Edmund Burke, was petitioner's coun-

sel at his original trial. Burke testified about his inadequate impeachment of the expert witness and his failure to object to the expert's statement that petitioner sexually abused the victim. The second witness, attorney David Howard, testified as petitioner's expert. Howard testified about the impact of the mistakes made by Burke and concluded that, in the absence of those mistakes, the verdict might have been different. To counter this testimony, the State called one expert witness, Judge Robert Grussing III, who presided over petitioner's original criminal trial. Judge Grussing acknowledged that Burke's failure to object to the expert testimony was a deviation from the standard of a reasonably competent attorney, but testified that the error did not affect the outcome of the trial. The superior court concluded that defendant had not shown that, but for Burke's deviation from the standard of competence, the outcome of his trial would have been different.

## II.

Petitioner argues that the court erred by permitting Judge Grussing, as the State's expert witness, to testify that the jury would probably not have reached a different result had defense counsel's performance met the prevailing standard of competency. Judge Grussing testified as to the weight of the evidence at trial, comparing the relative strength of the State's witnesses, and in effect, gave his opinion on how the jury reached its verdict:

Q: And the next question I have is: Do you think [the failure to object] would . . . have made a difference here, . . . a reasonable probability of a different outcome?

A: I do not believe that but for that evidence the outcome would have been any different. I think —

Q: [W]hy?

. . . .

A: Well, I sat through the trial. I heard all of the witnesses, the testimony of [the child victim]. The child, was, in my opinion, extremely strong. . . . There were attempts made to discredit that child's testimony . . . . But she was an extremely convincing witness. And it seemed to me that these other issues were peripheral in nature and that that case turned on the testimony of the child.

With respect to the State's expert witness, Judge Grussing testified that the expert "was not an impressive witness" and did not have an "aura of expertise." Judge Grussing also noted that he had addressed Burke's failure to object to the expert's testimony by giving the jury a curative instruction in "very strong language."

Judge Grussing's role at the post-conviction relief hearing is disturbing, both because he was asked to speculate about the evidentiary basis for the jury verdict and because he testified to the basic fairness of a criminal trial for which he was the presiding judge. In essence, Judge Grussing asked the court to believe, as a matter of expert testimony, that his own conduct of the trial cured counsel's shortcoming. Perhaps the most pointed example is Judge Grussing's testimony about the curative instruction that he gave the jury. After recognizing counsel's error, he was obligated to respond and mitigate the effect of the error. Although Judge Grussing stopped short of testifying that his jury instruction cured the error, he did evaluate his own efforts, stating that he made a "particular effort" and tried to make it "very forceful."

The State correctly points out that Vermont has no statutory provision or case law that explicitly bars testimony from the trial judge. Nonetheless, basic principles of fairness and due process suggest that Judge Grussing's testimony at the hearing was improper. The statute governing post-conviction relief, 13 V.S.A. § 7131, and relevant provisions of the Code of Judicial Conduct also support this conclusion.

The Legislature has explicitly prohibited the judge who presided over a defendant's criminal trial from hearing an application for post-conviction relief. 13 V.S.A. § 7131. This prohibition reflects an obvious and serious concern: a judge is unlikely to conclude that a trial over which that judge presided was fundamentally unfair to the criminal defendant. See *Bristol*, 159 Vt. at 337, 618 A.2d at 1291 (to obtain post-conviction relief, petitioner must establish that fundamental errors rendered conviction defective). The presiding judge, after all, had a responsibility to ensure that the trial was fair. Assigning a new and disinterested judge ensures that an applicant receives a fair opportunity to be heard, and avoids even the appearance of bias.

Although here Judge Grussing did not entertain the application for post-conviction relief, he did give crucial testimony evaluating the evidence and the verdict at petitioner's trial. Judge Grussing's role at the original trial does give him the benefit of first-hand knowledge; because of that role, however, and his obligations as presiding judge,

he cannot testify as a neutral and impartial observer of the trial. See *Helmbrecht v. St. Paul Ins. Co.*, 362 N.W.2d 118, 125-26 (Wis. 1985) (in malpractice action, trial court erred by permitting original judge to testify as to outcome of divorce proceeding had case been properly presented; requiring such testimony places judge in situation where position of neutrality would unavoidably be compromised, and judge would be forced to defend actions in original suit).

The State argues that Judge Grussing's testimony cannot be excluded merely because of his possible bias. Of course, many witnesses are biased or have some interest in a proceeding; typically, bias of a witness goes only to the weight of evidence, not to its admissibility. Judge Grussing, however, was not an ordinary witness. The State essentially argues that we should permit judges, clothed in the authority of the office, to testify at post-conviction relief hearings that the criminal trials over which they presided were conducted fairly and resulted in the correct verdict. We are convinced that such a practice would undermine both the propriety of the judicial office and the fairness of post-conviction relief proceedings.

The Code of Judicial Conduct also provides guidance on this issue. Judges are required to "act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary," A.O. 10, Canon 2(A), and to "perform judicial duties without bias or prejudice." A.O. 10, Canon 3B(5). Although we assume that Judge Grussing was not motivated by actual bias, his testimony was unduly prejudicial given its elevated aura of expertise. Moreover, "A judge shall not, while a proceeding is pending or impending in any court, make any public comment that might reasonably be expected to affect its outcome or impair its fairness . . . ." A.O. 10, Canon 3B(9). Although Judge Grussing's "comment" was his expert testimony, such testimony is certainly public, and is no more appropriate than the same comments expressed in a newspaper editorial or interview. In fact, the testimony is more troubling because it was not only likely to affect the outcome of the proceeding but the State intended that it do so.

■ Although this is the first time this issue has been addressed in Vermont, several federal courts in habeas corpus proceedings have excluded testimony from the judge who presided over the original trial. See, e.g., *Perkins v. LeCureux*, 58 F.3d 214, 220 (6th Cir. 1995) (statement made by sentencing judge ten years later regarding judge's thought processes at time of sentencing must not be considered in habeas proceeding); *Washington v. Strickland*, 693 F.2d 1243,

1263 (Former 5th Cir. Unit B 1982) (en banc) (state trial judge's testimony explaining reasons for imposing death penalty and probable response to evidence adduced at habeas hearing was inadmissible evidence), *rev'd on other grounds*, 466 U.S. 668 (1984); *Morrison v. Kimmelman*, 650 F. Supp. 801, 805 (D.N.J. 1986) (in habeas proceeding, court would not receive evidence from state trial judge, sitting as trier of fact, concerning how judge weighed evidence and whether judge would have convicted defendant absent illegally obtained evidence; judge may not be asked to testify about mental processes in reaching judicial decision); cf. *Schultz v. Thomas*, 832 F.2d 108, 110 (7th Cir. 1987) (in civil rights action against police officers alleging false arrest and use of excessive force, allowing state trial judge to testify as to credibility of witnesses in plaintiff's criminal trial usurped jury's role and unfairly prejudiced officers). This case poses a somewhat different question, because Judge Grussing was not the trier of fact in the original trial. Nonetheless, we find the reasoning of these courts instructive. For example, the "firmly established rule . . . that a judge may not be asked to testify about his mental processes in reaching a judicial decision," *Washington*, 693 F.2d at 1263, was violated when Judge Grussing was asked to testify about his curative instruction. These cases support our conclusion that the court erred by permitting Judge Grussing to testify.

## III.

Having determined that the superior court erred by admitting Judge Grussing's testimony, we must decide what effect the error had on the proceeding. We will reverse the court only if the error resulted in undue prejudice, not if the error was harmless. *In re M.B.*, 147 Vt. 41, 44, 509 A.2d 1014, 1016 (1986). Error is harmless if it "does not affect the substantial rights of the parties." V.R.C.P. 61; *Riess v. A.O. Smith Corp.*, 150 Vt. 527, 533, 556 A.2d 68, 72 (1988).

A review of the transcript indicates that the court found Judge Grussing's testimony persuasive. When counsel for petitioner objected to a portion of the testimony, the court responded that Judge Grussing's opinion would be "helpful" in determining whether defense counsel's errors had made a difference in the outcome of the trial. The court later overruled a second objection, stating that Judge Grussing's testimony was "really an opinion of an expert who has been on the bench 14 years, practically exclusively in the district court where criminal proceedings are heard."

As both petitioner's expert and Judge Grussing as the State's expert agreed that defense counsel's performance at trial had not met the prevailing standard of competency, the crucial issue at the hearing was whether, but for counsel's errors, the outcome of petitioner's trial would have been different. On this issue, Judge Grussing's testimony directly conflicted with that of petitioner's expert. Although the opinion below suggests that the court reviewed the trial transcripts independently, the court's view of the case was likely colored by reliance on Judge Grussing's testimony. For example, the court points to the "credibility" and "compelling testimony" of the child victim as other evidence supporting the jury's verdict; this finding, however, may have been influenced by Judge Grussing's description of the child as an "extremely convincing" witness.

As Judge Grussing gave persuasive testimony on a critical and contested issue, we are unable to conclude that allowing the testimony was harmless error. See, e.g., *Riess*, 150 Vt. at 533, 556 A.2d at 72 (admission of expert's statement that defendant's negligence was proximate cause of accident was not harmless error, because statement was practically only evidence of causation). Petitioner asks the Court to vacate his conviction and remand for a new trial. In the absence of reliable findings of fact and conclusions of law from the court below, however, we prefer to remand the case for a new post-conviction relief hearing. See *In re Kraatz*, 137 Vt. 533, 534, 409 A.2d 576, 576 (1979) (consideration of appeal of denial of post-conviction relief foreclosed by lack of findings of superior court; case reversed and remanded). Because we remand for a new hearing, we do not reach petitioner's second claim of error.

*Reversed and remanded for new hearing on petitioner's application for post-conviction relief.*