**Norma P. MARRS, Appellant,**

v.

**R. Michael KELLY and Kelly & Albers, Appellees.**

No. 2001–SC–0278–DG.

Supreme Court of Kentucky.

Jan. 23, 2003.

Philip C. Kimball, Louisville, Counsel for Appellant.

Armer H. Mahan, Jr., Lunch, Cox, Gilman & Mahan, P.S.C., Louisville, Counsel for Appellee.

LAMBERT, Chief Justice.

Appellant brought this legal malpractice claim against her workers' compensation attorney on grounds that he had failed to introduce relevant evidence on her behalf. In the malpractice case, the administrative law judge who presided over the workers' compensation case was permitted to testify that even if the omitted evidence had been introduced, it would have made no difference in the decision. The issue before this Court is whether the administrative law judge should have been permitted to so testify, i.e., that admissible evidence would have had no effect on the outcome of the workers' compensation case.

Appellant injured her back at work in 1989. Through her attorney, Appellee Michael Kelly, she filed a workers' compensation claim and settled for a 10% occupational disability. In 1992, she sustained another back injury and through Appellee filed another workers' compensation claim. In 1993, She was awarded a 10% occupational disability for the second injury. After this determination, her physician put strict limits on the type of work she could perform. Her employer subsequently laid her off because there were no positions that she could fill based on her work restrictions. Still represented by Appellee, Appellant reopened her second workers' compensation claim and sought total, permanent disability. In this reopening proceeding, Appellant was awarded an additional 10% occupational disability. The Workers' Compensation Board affirmed.

Appellant's claim against Appellee and his law firm, Kelly & Albers, was for negligent representation in the reopened workers' compensation claim. Appellant contended that Appellee failed to introduce expert testimony in support of her allegation of increased occupational disability. In opposition to Appellees' motion for summary judgment, Appellant introduced the report of two vocational experts who stated that Appellant was totally and permanently disabled and an affidavit from attorney John Stanley Hoffman that vocational expert testimony would have been probative of total, permanent disability and that Appellant's case would have been "enhanced greatly" had such evidence been presented. The depositions of Administrative Law Judge Lowther and Ellen Hesen, an attorney who represented Appellant's employer, were also before the court. Defense counsel Hesen testified that even if the vocational evidence had been presented, she would not have changed her position that Appellant was not entitled to additional workers' compensation benefits.

In her deposition, after reviewing the vocational experts' report, Administrative Law Judge Lowther testified that she would not have changed her award even if the vocational expert evidence had been introduced. She stated

I have reviewed this report from the Vocational Economics very closely after

going back and reviewing my original decision in Ms. Marr's (sic) case; and I have to say, in all candor, that this vocational report would have had no impact. Mr. Tierney and Dr. Berla indicate that Ms. Marr (sic) completed 11 years of formal education, which my record already reflected. They indicate that she—that her testing indicates that she's average in terms of word recognition and arithmetic achievement which is consistent with her degree of formal education which was my conclusion based on the record that was before me when I made my original decision. So, this would not have had any impact.

For purposes of the summary judgment motion, Appellee admitted that a jury could find that he acted negligently. Nevertheless, the Circuit Court granted summary judgment on grounds that Appellant failed to show that she was damaged by the negligence of Appellees. The deposition testimony of Administrative Law Judge Lowther to that effect was decisive.

After the trial court granted summary judgment, Appellant filed a motion to alter, amend or vacate. The trial court denied the motion, rejecting Appellant's arguments that the administrative law judge's testimony violated the Kentucky Code of Judicial Conduct, SCR 4.300. The Court relied on *Bierman v. Klapheke*, Ky., 967 S.W.2d 16 (1998). The Court of Appeals concluded that there was no genuine issue as to any material fact because Appellant did not introduce any "evidence that [Appellee's] breach of duty proximately caused her damage" and that "[t]he testimony given by ALJ Lowther and Hesen unequivocally indicates that even had [Appellee] introduced vocational expert testimony, it would have made no difference in the outcome."

Despite vehement objection to the admissibility of the Lowther testimony in the trial court, in her Court of Appeals brief Appellant conceded its admissibility: "Hesen and Lowther should indeed be permitted to testify at [her] trial; but their testimony should be treated by the courts at any rate, as that of any other witness: subject to the ultimate authority of the jury to determine its weight and credibility." Thus while Appellant abandoned her position that the Lowther testimony was inadmissible, she insisted that its weight and credibility should be determined by the trier of fact and not be used as the sole basis for a summary judgment. But even with the Lowther and Hesen testimony, this was not a summary judgment case. Hoffman's testimony created an issue of fact.[1] Summary judgment would have been appropriate if and only if one accepted the Lowther testimony in her capacity as the presiding administrative law judge, not merely as a reasonable administrative law judge.

While Appellant's concession in the Court of Appeals appears to have been ill-advised, (a point she concedes in her Supreme Court brief), the concession was made and the Court of Appeals was entitled to rely on it. Appellant's concession, however, is far short of acknowledging the right of Administrative Law Judge Lowther to dictate the outcome of the malpractice case by merely saying, "this would not had any impact." In fact, in her Court of Appeals brief, Appellant conceded only the bare admissibility of the Lowther testimony, but did not concede it as a proper basis for summary judgment.

We have no doubt that summary judgment was inappropriate and that this case must be remanded to the trial court for

---

1. *See Paintsville Hosp. Co. v. Rose*, Ky., 683 S.W.2d 255 (1985) and *Steelvest, Inc. v. Scan-* *steel Service Center, Inc.*, Ky., 807 S.W.2d 476 (1991).

further proceedings. The question then becomes whether the testimony of Administrative Law Judge Lowther should be admitted. We are loathe to order parties to trial based upon a concession that requires a misapplication of the law. In *Collins v. Hudson*[2] we encountered a circumstance where the parties and the courts below had overlooked a controlling provision of the statute. If the entire statute had been applied, dismissal would have resulted, but without the statute, retrial was to be necessary. This Court was required to decide whether failure of preservation compelled the trial court to proceed without the controlling provision of the statute. In response, we said

> In good conscience, we cannot, in the name of failure of preservation, particularly when the nature of the error was so elusive to both counsel and the courts below, return this case to a trial court, effectively directing it to apply the wrong law, thereby imposing liability that would not exist but for the clerical error committed by the LRC.[3]

In view of our conclusion that summary judgment was erroneous based on the Hoffman testimony, remand to the trial court will be required. As such, we will set forth the law herein as it relates to the testimony in a legal malpractice case by the judge who presided in the underlying case.

■ Kentucky Rules of Evidence, Rule 605, addresses the competency of a judge to serves as a witness. The rule provides in part that "[t]he judge presiding at the trial may not testify in that trial as a witness." However in *Bierman v. Klapheke*,[4] this Court recognized that KRE 605 does not prevent one who served as a judge in one phase of a case from testifying in subsequent and separate proceedings.

It was not reversible error for the trial judge to permit testimony by the ALJ. The argument that Canon 5 of SCR 4.300, Code of Judicial Conduct, which prohibits a judge from testifying as a witness in a case where he or she is the presiding judge acts to prevent Judge Dockter from testifying in this case is unpersuasive. As noted in Lawson Kentucky Evidence Law Handbook, 3d Ed.1993 at 151, KRE 605 "leaves intact the case law that allows a person who participates as a judge in one part of a case to testify in a subsequent and separate proceeding in that case." There is nothing to prevent a judge who is not the sitting or judge from testifying in any legal proceeding. Cf. *Department of Highways v. Hess*, Ky., 420 S.W.2d 660 (1967).[5]

The *Bierman* Court and Professor Lawson relied on *Department of Highways v. Hess, supra,* for the proposition that a judge is not generally disqualified from giving testimony in a separate proceeding. In *Hess*, a county judge was permitted to testify as to the value of land on behalf of a landowner when the case was heard in circuit court, despite having appointed the "disinterested housekeepers" who determined the amount of compensation. However, the Court observed provocatively that under different facts a different result might obtain.

2. Ky., 48 S.W.3d 1 (2001).

3. *Id.* at 4. *See also, Burton v. Foster Wheeler Corp.*, Ky., 72 S.W.3d 925, 929–30 (2002) and *First Nat'l Bank of Louisville v. Progressive Cas. Ins. Co.*, Ky., 517 S.W.2d 226 (1974) for the proposition that courts have a duty to properly apply the law without regard to omissions or errors by parties.

4. Ky., 967 S.W.2d 16 (1998).

5. *Id.* at 20.

If the county judge were required to perform a fact-finding function in determining the amount of compensation to be awarded in the county court, there might be good reason for a policy that would forbid his impeaching his own verdict, but that is not the case. Under KRS 177.083 and 177.086 he merely appoints three disinterested housekeepers for that purpose and is limited to finding that their report conforms to the statute. He has no discretion to modify or reject their award because the amount does not accord with his opinion. His duties in this respect are purely mechanical. Though we do not encourage the practice, we perceive no reason why he should be disqualified as a valuation witness when the litigation proceeds to a trial in the circuit court.[6]

Under prevailing workers' compensation statues, rules and decisions, administrative law judges have the most critical role. They must rule on the admission and exclusion of evidence, determine credibility of witnesses, and decide what weight, if any, is to be given to the evidence they admit.[7] While vocational expert testimony may not compel a finding in favor of a claimant even if the testimony is uncontradicted,[8] if the evidence is admitted, the administrative law judge must consider it. It follows that if the evidence is negligently omitted and the administrative law judge has no opportunity to consider it, then the negligence may not be eradicated by testimony to the effect that it would have made no difference.

A plaintiff in a legal malpractice case has the burden of proving "1) that there was an employment relationship with the defendant/attorney; 2) that the attorney neglected his duty to exercise the ordinary care of a reasonably competent attorney acting in the same or similar circumstances; and (3) that the attorney's negligence was the proximate cause of damage to the client."[9] Based on these factors, a legal malpractice case is the "suit within a suit."[10] To prove that the negligence of the attorney caused the plaintiff harm, the plaintiff must show that he/she would have fared better in the underlying claim; that is, but for the attorney's negligence, the plaintiff would have been more likely successful.

Administrative Law Judge Lowther's testimony should not have been allowed as it confused the role of an objectively reasonable judge with the views of the particular judge and resulted in application of the wrong standard for determining whether the legal malpractice case should have been submitted to the trier of fact. While this Court has not previously decided whether a trial judge may testify in such circumstances, courts in other jurisdictions have so decided and we will review some of those decisions.

In *Helmbrecht v. St. Paul Insurance Co. and Colwin*,[11] a client hired an attorney to represent her in a divorce proceeding. Through her attorney, she settled with her husband but later realized that she could not live on the maintenance and child support agreed upon in the settlement. She

6. *Commonwealth, Department of Highways v. Hess*, Ky., 420 S.W.2d 660, 661–62 (1967).

7. *Halls Hardwood Floor Co. v. Stapleton*, Ky. App., 16 S.W.3d 327 (2000).

8. *See Eaton Axle Corp. v. Nally*, Ky., 688 S.W.2d 334 (1985).

9. *Stephens v. Denison*, Ky.App., 64 S.W.3d 297, 298–99 (2001).

10. RONALD E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE, § 33.8 (5th ed.2000).

11. 122 Wis.2d 94, 362 N.W.2d 118 (1985).

filed a legal malpractice action against her attorney for damages in the amount of the difference between what she received in the settlement and what she would have received if her attorney had not negligently represented her. At the trial of the malpractice case, the judge in the divorce proceeding testified that he believed the attorney achieved a fair settlement, and he also testified to what he would have done had the case gone to trial. On appeal, the issue decided by the Supreme Court of Wisconsin was whether an objective or subjective standard should be used to determine damages in a legal malpractice case. The subjective standard considers what the presiding judge would have awarded had the attorney not been negligent while the objective standard considers what a "reasonable judge" would have awarded under the same or similar circumstances. The Court articulated several policy considerations in favor of the objective standard. Among other things, the Court believed application of the subjective standard would "necessarily place the judge in a peculiar situation where his position of neutrality would be unavoidably compromised, and he would be forced to defend his own actions in the original suit. Also, the risk of prejudice is great." [12] For its primary reason, however, the Court stated that

> Specifically, the issue is whether the monetary award actually received... should be compared with what... the particular judge in the original divorce action, would have awarded had all of the facts been properly presented to him, or with what a "reasonable judge,"

knowing all the facts, would have awarded.[13]

The Court adopted the reasonable judge standard. The Supreme Court of Oregon also addressed this issue, adopted the "reasonable judge" test, and concluded that "[t]he question what outcome should have followed if defendants had conducted a proper investigation, presentation (or exclusion) of evidence ...remains a question of fact for the jury." [14] Several other jurisdictions have held that the objective standard applies in legal malpractice cases.[15]

In the present case, the issue was whether Appellant would have been determined to have a greater disability if vocational expert testimony had been presented in her workers' compensation case. This is a question of fact, and the jury in the legal malpractice case must decide what the result would have been in the underlying case if the omitted evidence had been presented to a fair, reasonable, competent workers' compensation judge. As this Court noted in *Hess*, if a judge is also the fact finder, "there might be good reason for a policy that would forbid his impeaching [or supporting] his own verdict." [16]

Even when the objective standard is observed in a legal malpractice case, the judge in the underlying case may not testify as to what a reasonable judge should have done. There are several policy reasons supporting this rule.

If the judge presided at the underlying proceeding, an impermissible subjective standard is injected. The focus than

---

12. *Id.* at 105–6, 362 N.W.2d 118.

13. *Id.* at 104, 362 N.W.2d 118.

14. *Chocktoot v. Smith,* 280 Or. 567, 571 P.2d 1255, 1259 (1977).

15. *Phillips v. Clancy,* 152 Ariz. 415, 733 P.2d 300 (Ct.App.1986); *Justice v. Carter,* 972 F.2d

951 (8th Cir.1992); *Brust v. Newton,* 70 Wash. App. 286, 852 P.2d 1092 (Ct.App.1993); and *Lombardo v. Huysentruyt,* 91 Cal.App.4th 656, 110 Cal.Rptr.2d 691 (2001).

16. 420 S.W.2d at 661.

[sic] becomes why the judge made his or her decision and what he or she would have done under different circumstances. Such use of expert testimony usurps the jury's prerogative to decide the ultimate facts. Under the objective standard for deciding what "should have been," the use of such testimony, even by the jurist who would have made that decision, is improper.[17]

Even though Appellant conceded in the Court of Appeals that Administrative Law Judge Lowther should be permitted to testify, Lowther's testimony was insufficient to support summary judgment unless it was treated as decisive because she was the presiding administrative law judge. We reject any such view. This case must be remanded to the trial court and in view of our adoption of the objective standard as set forth hereinabove, Administrative Law Judge Lowther's testimony should be excluded from further proceedings in this case.

LAMBERT, C.J., and GRAVES, JOHNSTONE, KELLER, STUMBO, and WINTERSHEIMER, JJ., concur.

COOPER, J., files a separate opinion concurring in part and dissenting in part.

COOPER, Justice, Concurring in Part and Dissenting in Part.

I concur in the majority opinion's conclusion that the issue of causation in a legal malpractice action should be tested by an objective rather than a subjective standard. However, I believe ALJ Lowther's testimony should be excluded on the basis of our existing rules of evidence and judicial conduct, thus obviating the necessity to resort to what appears to be a "public policy" decision with respect to what is essentially an evidentiary issue. Further-

more, I concur in the late Justice Leibson's belief that a jury should not be permitted to decide in a legal malpractice action what a reasonable judge or ALJ would have done in the underlying action where the underlying action was triable only by a judge and not by a jury.

I.

In an action for malpractice, the plaintiff must prove (1) duty, (2) breach, (3) causation, and (4) damage. For purposes of the summary judgment entered in this case, duty and breach (negligence) are conceded. The issue before us is what kind of evidence is relevant and competent to prove or disprove that the attorney's negligence caused damage to his client. Because the proper test of causation is an objective one, i.e., "What would a reasonable judge have done if presented with different evidence?", ALJ Lowther's subjective testimony that her award would have been the same did not address the dispositive issue, and thus was insufficient to support a summary judgment.

However, the decision to preclude her from expressing an opinion as to either what she would have done or what a reasonable judge would have done if presented with the omitted evidence implicates several existing rules of evidence. Certainly, ALJ Lowther is a competent witness under KRE 601. KRE 605 renders a judge incompetent to testify only in the case over which he/she is then presiding. Thus, the issue becomes primarily one of relevancy. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to a determination of the action more probable or less probable than it would be without the evidence." KRE 401. "All relevant evidence is admissible, except as otherwise provided by the Constitutions of the

17. MALLEN, *supra* note 10, at § 33.17.

United States and the Commonwealth of Kentucky, by Acts of the General Assembly of the Commonwealth of Kentucky, by these rules, or by other rules adopted by the Supreme Court of Kentucky." KRE 402. ALJ Lowther's expert opinion as to what a reasonable judge would have done would be relevant and would "assist the trier of fact to understand the evidence or to determine a fact in issue." KRE 702.

Most courts that have faced this issue, however, have held that the testimony of the judge who presided over the underlying action is excluded by rules equivalent to KRE 403 or SCR 4.300, Canon 2 of the Code of Judicial Conduct. Canon 2 provides in pertinent part:

A. A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and *impartiality* of the judiciary.

. . .

D. . . . A judge shall not lend the prestige of judicial office to advance the private interests of . . . others . . . .

(Emphasis added.) (ALJ's are subject to the Code of Judicial Conduct. KRS 342.230(5).)

Thus, some courts exclude the testimony of the judge who presided over the underlying action because the appearance by the judge as a witness for or against a litigant reflects adversely on the impartiality of the judiciary. "In such instance, the judge appears to be throwing the weight of his position and authority behind one of two opposing litigants." *Merritt v. Reserve Ins. Co.*, 34 Cal.App.3d 858, 110 Cal.Rptr. 511, 528 (Ct.App.1973). *See Phillips v. Clancy*, 152 Ariz. 415, 733 P.2d 300, 305–06 (Ct.App.1986); *McCool v. Gehret*, 657 A.2d 269, 280 (Del.1995); *Cornett v. Johnson*, 571 N.E.2d 572, 575 (Ind.Ct.App.1991);

*Ginsberg v. McIntire*, 348 Md. 526, 704 A.2d 1246, 1256–57 (1998); *State v. Grimes*, 235 N.J.Super. 75, 561 A.2d 647, 649–50 (Ct.App.Div.1989); *Herald Cos., Inc. v. Town of Geddes*, 122 Misc.2d 236, 470 N.Y.S.2d 81, 83 (N.Y.Sup.Ct.1983); *Hirschberger v. Silverman*, 80 Ohio App.3d 532, 609 N.E.2d 1301, 1306 (Ct. App.1992); *Joachim v. Chambers*, 815 S.W.2d 234, 238–39 (Tex.1991); *In re Wilkinson*, 165 Vt. 183, 678 A.2d 1257, 1259 (1996).

Other courts exclude such testimony for reasons equivalent to the KRE 403 balancing test because of the degree of prejudice to the adverse party. *E.g., People v. Drake*, 841 P.2d 364, 368 (Colo.Ct.App. 1992); *Battle v. Thornton*, 646 A.2d 315, 325 (D.C.1994) ("Such testimony is likely to be particularly prejudicial in malpractice actions."); *Cornett, supra*, at 575 ("The risk of prejudice to the other party would be great if the presiding judge were allowed to testify in a subsequent malpractice action."); *Hirschberger, supra*, at 1306 ("[A] jury could be misled into thinking that their opinions should be given greater weight than another expert unconnected to the case."); *In re Wilkinson, supra*, at 1259 ("[H]is testimony was unduly prejudicial given its elevated aura of expertise."); *Helmbrecht v. St. Paul Ins. Co.*, 122 Wis.2d 94, 362 N.W.2d 118, 125 (1985) ("[T]here was the danger that the jury would give his testimony undue weight.") (quotation omitted).

The reasoning behind both of these approaches is sound and applicable to the instant case. Thus, I would exclude ALJ Lowther's testimony by application of existing rules, obviating any need to decide what should be an evidentiary issue on the basis of public policy.[1]

---

1. While the judge who presided over the un-   derlying action should not be permitted to

## II.

Appellees assert that if this case is remanded for trial, the trial should be before a judge sitting without a jury. I agree. In his Kentucky Law Journal article on legal malpractice, Justice Leibson argued compellingly that a jury in a legal malpractice action should be permitted to decide only issues of negligence, not causation and/or damages.

A declaratory judgment action is a non-jury trial and involves the trial court in findings of fact as well as conclusions of law.... [T]here are sound legal reasons why certain cases are tried, and tried better, without a jury. Matters which would be decided by a judge without a jury at the prior trial, whether by findings of fact or conclusions of law, are more efficiently decided by the judge rather than the jury when legal malpractice cases are tried.

. . .

[I]n a case founded upon alleged improper conduct of prior litigation, the factual question that a prior jury would have decided if the defendant/attorney had conducted a proper investigation, presentation, or exclusion of evidence, or other steps bearing on a decision based on facts, is a question for the jury. But the question of what legal decision would have followed in the earlier case if the defendant/attorney had taken proper steps is a question of law for the court.

. . .

It is unlikely that a jury could ever be adequately instructed to determine an equitable matter of this nature because the jury lacks sufficient training to func-

tion as an equity judge in the first place. The reasons the constitutional right to trial by jury in civil cases does not apply to trial of certain issues are subjects too broad to be included within the scope of this Article. Suffice it to say that the type of issues historically included within equitable jurisdiction, and now included in the expanded meaning of non-jury jurisdiction, are so different in kind, and involve so many variables in application, that jury and non-jury cases are qualitatively different.

Charles M. Leibson, *Legal Malpractice Cases: Special Problems in Identifying Issues of Law and Fact and in the Use of Expert Testimony*, 75 Ky. L.J. 1, 8–9, 13–14, 17 (1986–87).

While a jury is competent and qualified to determine what another reasonable jury would have done if presented with evidence negligently omitted in, *e.g.*, an ordinary tort case, a jury is both incompetent (in the legal sense) and unqualified to determine what a reasonable judge or ALJ would have done had he/she been privy to the omitted evidence. That is particularly true where, as here, the issue involves a highly technical area of the law, specifically, the nature and quality of proof necessary to warrant an increase (or, as here, a greater increase) of a previous workers' compensation award in response to a motion to reopen that award on the basis of a change of conditions under the statutory requirements of KRS 342.125. ALJ's are required to have at least "five years' experience in the Commonwealth in the practice of workers' compensation law or a related field, and extensive knowledge of

testify as an expert as to how that judge or another "reasonable judge" would have decided the case if presented with additional evidence, the judge could testify as to factual events observed during the prior or collateral proceeding if there is a compelling need for

such testimony, *i.e.*, if the evidence is unavailable through other means. *Drake, supra*, at 367–68; *State v. Williams*, 30 Conn.App. 654, 621 A.2d 1365, 1369 (1993); *Ginsberg, supra*, at 1257–58.

workers' compensation law." KRS 342.230(3). Simply being an experienced attorney is insufficient. Being a lay juror is far more insufficient. It is a difficult proposition for even an experienced trial judge who is unfamiliar with the technical intricacies of the Workers' Compensation Act to predict how a "reasonable ALJ" would decide a case if presented with a particular item of additional evidence. It would be an impossible task for a jury. That is especially true if ALJ's are precluded from testifying as expert witnesses.[2]

The Supreme Court of Utah held in *Harline v. Barker*, 912 P.2d 433 (Utah 1996), that the right to a jury trial in an action for legal malpractice depends upon whether the plaintiff was entitled to a jury trial in the underlying case.

> Harline seeks to have a jury determine what only a bankruptcy judge could have determined in the first instance. We see no reason why a malpractice plaintiff should be able to bootstrap his way into having a lay jury decide the merits of the underlying "suit within a suit" when, by statute or other rule of law, only an expert judge could have made the underlying decision. It is illogical, in effect, to make a change in the law's allocation of responsibility between judge and jury in the underlying action when that action is revisited in legal malpractice actions and thereby distort the "suit within a suit" analytic mode. To so proceed ignores and, in some cases, contradicts the public policy goals which prompted the initial assignment of decision-making authority respectively to judges and to juries on specific issues.

There is no basis for abrogating those public policy goals simply because the matter arises in a legal malpractice context.

*Id.* at 440 (internal citation omitted). I agree. If the underlying action could only have been decided by a judge or ALJ, and if an objective test is to be applied to the issue of causation, *i.e.*, what would a reasonable judge or ALJ have decided if presented with different evidence, that decision should remain in the hands of someone with at least a modicum of knowledge of how such decisions are made.

Accordingly, I concur in the majority's decision to exclude ALJ Lowther's subjective testimony as to causation and to also exclude her potential expert opinion as to how a "reasonable ALJ" would have decided the case if presented with additional evidence. However, I dissent from the majority's decision to remand this case for a trial by jury on the issues of causation and damages and would require those issues to be tried before a judge sitting without a jury.

---

**2.** One might wonder how this legal-malpractice plaintiff could counter testimony by the defendant attorney that he chose not to hire an expensive "economics expert" because he knew of ALJ Lowther's reputation for giving little or no credence to such testimony. Such evidence is entirely relevant to the issue of negligence but will naturally "leak" into the issue of causation, even if the jury is properly instructed to apply an objective rather than a subjective test to that issue.