**Talbert BALL Plaintiff,**

v.

**Phil STALNAKER Defendant.**

**No. CIV. 05–263–GFVT.**

United States District Court,
E.D. Kentucky,
Southern Division.

Sept. 30, 2007.

Charles M. Johnstone, II, Johnstone, Gabhart & Prim, LLP, Charleston, WV, for plaintiff.

Michael J. Schmitt, Jonathan C. Shaw, Porter, Schmitt, Banks & Baldwin, Paintsville, for defendant.

## ORDER

GREGORY F. VAN TATENHOVE, District Judge.

This matter is before the Court on the Motions for Summary Judgment filed by the Plaintiff and the Defendant [R. 38–39]. The parties have fully briefed the Motions. For the reasons set forth below, and pursuant to Federal Rule of Civil Procedure 56, the Court will deny them both.

### I.

### BACKGROUND

This matter began as an original action in based on diversity jurisdiction as set forth in 28 U.S.C. § 1332, which requires both diversity of citizenship and the requisite amount in controversy. [R. 1]. In his Complaint, the Plaintiff, Talbert Ball ("Ball") seeks damages from Phil Stalnaker ("Stalnaker") for legal malpractice. [Id.]. He asks for a jury trial on all triable issues. [Id.]. Ball claims that Stalnaker, a licensed attorney, committed legal mal-

practice during his representation of him in 1996 in a civil action in Pike Circuit Court. [Id.].[1] In that action, styled *Hamilton v. Ball, et al*, Pike Civil Action 96–CI–867, Hamilton claimed that Ball committed fraud, conversion, and theft related to a mine auger owned by Hamilton[2] and which was stolen sometime in 1980. (the "Tort Action").

Although the trial court denied the motion for summary judgment Stalnaker submitted regarding the statute of limitations defense,[3] it ultimately directed a verdict in favor of Ball as to the fraud and conversion claims on limitations grounds. Despite this ruling, the court permitted the theft claim to go forward, pursuant to Ky. Rev.Stat. § 413.140(1)(j) and Ky.Rev.Stat. § 413.190(2), and submitted special interrogatories to the jury requiring them to determine whether Hamilton had knowledge of the theft outside the limitations period. The jury concluded that he did not, and a judgment of $111,000 was entered against Ball for the theft.

The Court of Appeals affirmed the judgment noting that the jury finding on the statute of limitations was supported by substantial evidence. [R. 40, Attach. 7]. Further, the appellate court found that Hamilton was entitled to a punitive damages instruction. [Id.]. The Kentucky Supreme Court denied discretionary review, and Ball voluntarily settled the punitive damages claim for $130,000. [R. 40]. It is during this Tort Action that Ball claims Stalnaker committed malpractice, and but

for this negligence, the trial court would have granted summary judgment or directed a verdict in his favor, or that the jury would have reached a different verdict.

Specifically, Ball claims that Stalnaker committed malpractice when he failed to call Robert O. Forsythe, as a witness in the Tort Action. Officer Forsythe was the Kentucky State Police Detective who investigated the auger theft in 1980. [R. 40, Attach. 13]. In addition to his investigation, Officer Forsythe prepared a report concerning the theft which indicated Ball may have been involved, and notes that he relayed this information to Hamilton. [R. 40, Attach. 9]. Ball asserts this testimony would have yielded a different result in the Tort Action because it would have entitled him to a statute of limitations defense on all claims against him. According to Ball, Officer Forsythe's testimony and accompanying report contradicted or clarified Hamilton's testimony regarding when he first "knew" of Ball's potential involvement in the auger theft. During that investigation, Ball apparently denied stealing the auger, but stated that he had removed the legs at the direction of another company. That investigation closed in 1981 without any criminal action being taken because there were no leads or developments. [R. 45].

As part of the instant litigation, Officer Forsythe submitted an affidavit indicating that he advised Hamilton of his suspicions of Ball's involvement, but noted that be-

---

1. Ball originally retained Michael deBourbon to represent him, but Mr. deBourbon withdrew because of a conflict, and Mr. Stalnaker began his representation then. Notably, Stalnaker terminated his representation of Ball prior to the appellate process. [R. 41, Attach. 10, 45].

2. The auger was owned by James J. Hamilton's company, Camp Creek Mining, who ulti-

mately was the proper plaintiff in the state court action. [R. 40, Attach. 5]. For purposes of clarity, however, this Court will refer to Hamilton as the plaintiff in the Tort Action.

3. Mr. Stalnaker plead statute of limitations as an affirmative defense in the Answer to the Complaint. [R. 40, Attach. 4].

cause Ball felt he had authority to remove the legs, that no criminal charges would be brought. [R. 41, Attach. 1]. Officer Forsythe further stated that he advised Hamilton that a civil action would be his alternative at that time. [Id.]. The Kentucky State Police conducted a subsequent investigation in 1996 after receiving new information about the theft which led to the discovery of the stolen auger components being found on Ball's property. [R. 40, Attach. 9–12]. The Tort Action was filed approximately six months thereafter. [R. 40, Attach. 1].

During the Tort Action, Hamilton could not recall when he learned of Ball's involvement, but his son testified that the family only had actual knowledge after the 1996 investigation when auger components were discovered on Ball's property. [R. 40, Attach. 8]. Ball disputes the validity of this testimony and bases his current legal malpractice action on Stalnaker's failure to call Officer Forsythe to dispute it. The effect of this failure is the subject of both parties' motions for summary judgment. Ball's motion is unique in that he asks this Court to assume negligence on the part of Stalnaker, and find that proximate causation exists for the malpractice claim specifically as it relates to the trial court's decision not to grant summary judgment in his favor on all claims, or directed verdict on the theft claim. [R. 41]. Ball contends that the failure to introduce Officer Forsythe's testimony "caused" the legal malpractice as a matter of law because the trial court and subsequent appeals would have been different if the trial court had been presented this information.

To the contrary, Stalnaker asks this Court to determine, as a matter of law, that his actions did not constitute malpractice generally. Stalnaker contends that the strategic and tactical choices made by an attorney during litigation are not mal-

practice. [R. 40]. In support, along with the majority of the record from the Tort Action, he presents the deposition testimony and opinion letters of two attorneys, Neal Smith and Bernard Pafunda, indicating that the result of the litigation would not have changed with the testimony. [R. 40, Attach. 27–30, 36–37]. Because both parties raise exactly the same issue, although in slightly different procedural contexts, the Court addresses the causation question jointly and will deny both motions.

## II.

## DISCUSSION

### A. *Summary Judgment Standard*

Fed.R.Civ.P. 56(c) provides that judgment for the moving party is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See also Browning v. Dep't of Army*, 436 F.3d 692, 695 (6th Cir.2006) (citations omitted). While all inferences are drawn in favor of the non-moving party, that party still must present some affirmative evidence supporting its position to defeat an otherwise appropriate motion for summary judgment. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (non-movant must "do more than simply show there is some metaphysical doubt as to the material facts") (citations omitted); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Stated alternatively, "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reason-

ably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. *Substantive Motions*

■■■ Kentucky courts have considered the issue of legal malpractice and treats it much like a general negligence action. Notably, however, the attorney-client relationship is contractual in nature, and "generally that of principal and agent; however, the attorney is vested with powers superior to those of any ordinary agent because of the attorney's quasi-judicial status as an officer of the court; thus the attorney is responsible for the administration of justice in the public interest, a higher duty than any ordinary agent owes his principal." *Daugherty v. Runner,* 581 S.W.2d 12, 16 (Ky.App.1978). This "higher duty" requires the attorney to "exercise in all his relationships with this client-principal the most scrupulous honor, good faith and fidelity to his client's interest." *Id.* Whether the attorney discharges this burden depends on his or her exercise of care and skill as compared to that "customarily provided by members of the legal profession." *Id.*

■■■ In order to state a cause of action for legal malpractice, one must establish the following elements:

> "(1) that there was an employment relationship with the defendant/attorney; (2) that the attorney neglected his duty to exercise the ordinary care of a reasonably competent attorney acting in the same or similar circumstances; and (3) that the attorney's negligence was the proximate cause of damage to the client." Based on these factors, a legal malpractice case is the "suit within a suit." To prove that the negligence of the attorney caused the plaintiff harm, the plaintiff must show that he/she would have fared better in the underly-

ing claim; that is, but for the attorney's negligence, the plaintiff would have been more likely successful.

*Marrs v. Kelly,* 95 S.W.3d 856, 860 (Ky. 2003). Typically, this determination is one of fact appropriate for the jury. *Daugherty,* 581 S.W.2d at 16 (" 'the existence or nonexistence of these actionable facts, as well as of those constituting the defense, are such as properly should be found by a jury under appropriate instructions, or by the trial court if a jury is not demanded.' ") (citations omitted).

■■■ Both Ball and Stalnaker ask this Court to find, as a matter of law, that causation either exists, or does not exist, to support the malpractice claim. [R. 38–39]. While this argument seems legal in nature, Kentucky law supports permitting these claims to go to the jury as they involve disputed questions of fact, and specifically has so held in the case of legal malpractice actions. *Daugherty,* 581 S.W.2d at 16. Thus, legal causation is a question of fact for the jury, and can become a question of law only when "the facts are undisputed and susceptible of but one inference." *See Johnson v. Triangle Insulation,* 2003 WL 21769867, *1, *2 (Ky.App.2003) (citations omitted). Proximate causation is a mixed question of law and fact. *Trail–Likoy v. St. Joseph Healthcare, Inc.,* 2006 WL 2193496, *1, *2 (Ky.App.2006) (citations omitted). In order to be a proximate cause, the actions must be both the "cause in fact" of the injury (known as "but for" causation) and a "substantial factor" in causing the injury. *See id.* To be a substantial factor, the injury "need only flow directly from the event" which caused the injury. *See Deutsch v. Shein,* 597 S.W.2d 141, 145 (Ky.1980).

#### 1. *Ball's Motion for Partial Summary Judgment*

■■■ Ball seeks partial summary judgment on the causation element of the mal-

practice claim as it relates to the trial court's decision to deny summary judgment and directed verdict on the theft claim. [R. 41]. Ball relies exclusively on Stalnaker's failure to present Officer Forsythe's report. Ball feels Officer Forsythe's report contradicted the testimony of Hamilton that he only knew of Ball's potential involvement in the auger theft in 1996.[4] [Id.]. He argues that, had such testimony been presented during the Tort Action, the trial court would have reached no other conclusion than the statute of limitations barred all claims against him. In support, Ball cites a Kentucky case indicating that the court, not the jury, must determine whether a reasonable judge would have reached a different result. [R. 41 citing *Marrs v. Kelly*, 95 S.W.3d 856 (Ky.2003) ].

As a preliminary matter, Ball misstates the holding of *Marrs*. The Kentucky Supreme Court there stated that the "reasonable judge" standard may be applicable in certain circumstances, but that ultimately it was a jury question as to whether that standard had been violated. *Marrs v. Kelly*, 95 S.W.3d 856, 861 (Ky.2003) (" This is a question of fact, and the jury in the legal malpractice case must decide what the result would have been in the underlying case if the omitted evidence had been presented to a fair, reasonable, competent workers' compensation judge."). Therefore, this Court declines to grant judgment as a matter of law as to causation for the reasons set out by Ball.

In addition, and for the reasons articulated as it relates to Stalnaker's Motion, this Court would deny Ball's motion as to causation because that matter is one of disputed fact that is appropriate for the jury in this case. *See id.*; *Equitania Ins. Co. v. Slone & Garrett, P.S.C.*, 191 S.W.3d

552, 555 (Ky.2006) ("There can be many circumstances in which lawyers can commit errors of judgment which deviate from the standard of care. Whether an error of judgment is legal malpractice is a question of fact for the jury.").

### 2. *Stalnaker's Motion for Summary Judgment*

In his Motion for Summary Judgment, Stalnaker argues that his failure to present Forsythe's testimony did not constitute legal malpractice. [R. 38, 40, 47]. He contends that his decision was tactical and that such strategy decisions cannot constitute causation in a malpractice action. [R. 40, 47]. Next, he claims that in light of the other testimony presented at trial, the evidence from Officer Forsythe would not have changed the result reached by the jury and the subsequent appellate courts. [Id.]. Finally, he argues that the decision not to call Officer Forsythe was made in his client's best interest because Stalnaker feared the testimony potentially could result in criminal actions being brought against Ball. [Id.]. Likewise, he argues that he cannot be responsible for Ball's subsequent voluntary decision to settle the punitive damages claim. [Id.].

Both parties present exhaustive accounts of the proceedings which occurred during the Tort Action, and of the 1980 and 1996 investigations regarding the auger theft. The majority of the information presented goes to when the Hamiltons first received information regarding the potential involvement of Ball in the theft, and further, testimony regarding Ball's actual involvement. This rendition is complicated by the fact that the auger was stolen over the course of time as its parts were removed separately. [R. 40, 47]. The central disputed issue, and upon which

---

**4.** Hamilton passed away during the pendency of the Tort Action; therefore, his deposition was used at the trial of that action. [R. 41, 45].

both parties' causation argument rests is whether the jury would have reached a different verdict, or the Court made a different ruling on the dispositive motions had it known of the report by Officer Forsythe.

Would the jury or the Court have believed Officer Forsythe over that of the other witnesses presented? Perhaps, but perhaps not. With respect to the knowledge issue, Stalnaker argues that sufficient evidence of Ball's involvement was presented such that the result would not have changed even with Forsythe's testimony. Stalnaker argues that he addressed the matter sufficiently in the deposition of James Hamilton and the Forsythe report was attached as an exhibit. [Id., Attach. 9–10, 31, 32]. Therefore, Stalnaker contends that the jury and the trial court were both aware of any potential contradictions as to when Hamilton became aware of Ball's involvement for statute of limitations purposes. [R. 40, Attach. 31; 45].

While the trial court did deny the motion for summary judgment as to the fraud, conversion, and theft claims, it granted a directed verdict in Ball's favor as to the fraud and conversion claims prior to submitting the issue to the jury. [R. 40, Attach. 5]. Presumably, the court did so based on the statute of repose applicable

to those claims, but found that the theft claim, under which a civil action for the actual damages could be brought, raised a question of fact for the jury.[5] Stalnaker contends that the question of knowledge for limitations purposes was a question solely for the jury. [R. 40, 45].

While accurate, it misses the mark. The question is whether the jury would have reached a different conclusion had it had the omitted evidence before it. Even though Stalnaker addressed the issue in Hamilton's deposition, that is a different matter than actually calling Mr. Forsythe as a witness himself. Upon review of Forsythe's report and potential testimony as outlined in his affidavit, this Court finds that a question of fact exists as to whether the jury, or the court would have reached a different result had it had that information available. Officer Forsythe indicates that he specifically advised Hamilton that Ball had been involved with the theft, albeit he did not say he was indeed the thief. [R. 41, Attach. 1]. Further, he states that he advised Hamilton that the prosecuting authorities did not intend to pursue criminal charges, but suggested Hamilton file a civil action to recover his losses. [Id.].

The deposition testimony of the attorneys supporting Stalnaker actually counsel against summary judgment in this instance, although both opine that the result

---

**5.** The applicable statute, Ky.Rev.Stat. § 413.140(1)(j), allows an "action for the recovery of damages or the value of stolen property, against the thief or any accessory" to be "commenced within one (1) year after the cause of action accrued." Subsection Six provides that this cause of action is deemed to accrue "at the time of discovery of the liability." *Id.* § 413.140(6). Further, Ky.Rev.Stat. § 413.190(2) indefinitely extends this limitations period if the person committing the offense actively conceals it. In this instance, the trial court found that a question of fact existed as to when the Hamiltons had that knowledge and submitted a specific interroga-

tory to the jury on that issue. The jury found that such knowledge existed within the limitations period. Although these provisions, along with the discovery rule generally, may have been part of the trial court's decision on this claim, it is not clear from the record below. What is clear, however, is that the question of when the Hamiltons first knew of Ball's involvement in the auger theft presented a question of fact for the jury below. Therefore, any omitted evidence which may have impacted that decision presents a question of fact for this Court at the summary judgment stage.

would not have been different with Forsythe's testimony. In fact, Mr. Pafunda states that he would be "constrained" to speculate on when the Hamiltons had knowledge of Ball's involvement. [R. 40, Attach. 27]. Neal Smith indicates that Forsythe's testimony might have been evidence the jury would have considered, although it would not have changed the appellate rulings. [R. 40, Attach. 29–30]. Even Mr. Pafunda states: "Forsythe is a difficult question, all right?" [R. 40, Attach. 36]. Also, Ball offers the contrary testimony of an independent attorney Michael J. Cox, and his appellate counsel, William Wilhoit in support of his position that Stalnaker deviated from the standard of care by failing to present Forsythe as a witness. [R. 45, Attach. 5–15]. Both Cox and Wilhoit opine that the testimony of Forsythe could have yielded a different result both from the trial court and the jury because it presented sufficiently contrary and critical evidence as to the knowledge of the Hamiltons thereby creating a viable statute of limitations defense for Ball.[6] [Id.].

Next, Stalnaker contends that the other evidence at the trial supported the finding reached by the jury such that the verdict would not have been different. [R. 40]. Stalnaker recounts the trial testimony of former employees of Ball, who stated that Ball told them to take the auger and acknowledged that it was the one belonging to the Hamiltons. [Id., 18, 21–26]. Further, Ball himself admitted some tangential involvement as it related to the actions of his employees and his knowledge of those actions, and his own involvement in the theft. [R. 40, Attach. 15–17, 20]. While this may support a finding that Ball was responsible for the theft, it does not contradict Ball's contention that the Hamilton's possessed this knowledge as early as 1980. Ball contends that the testimony of Officer Forsythe, if presented, may have done just that and required a different result. This Court cannot necessarily disagree; therefore, that it presents a question of fact appropriate for a jury.

Finally, Stalnaker argues that the decision not to call Officer Forsythe was made in his client's best interest because Stalnaker feared the testimony potentially could result in criminal actions being brought against Ball. [R. 40, Attach. 31]. This point is echoed by the opinion letters presented by Stalnaker. [R. 40, Attach. 28, 30]. Even if true, this does not obviate completely the larger question which is whether the omitted evidence would have impacted the decisions made below. Perhaps this evidence may have subjected Ball to criminal charges, a matter this Court presumes Stalnaker discussed with Ball during his representation. Regardless, the question before this Court, at Ball's own request, is whether this evidence, if presented, would have yielded a different result for Ball during the trial below.[7] Again, as noted earlier, that question raises a genuine issue of fact.

Without question, the claim presented by Ball presents a difficult question. Nonetheless, at this stage, and in light of

---

**6.** The Court presumes both parties presented these contrary attorney opinions to demonstrate the actions of a "reasonable attorney in the profession." This Order should not be construed as adopting any particular view espoused by these attorneys, as any commentary on the reasonableness of their respective opinions, or a conclusion as to the merits of Ball's claims. Rather, the decision of this court determines only that a genuine issue of material facts exists as to the malpractice claim against Stalnaker.

**7.** Stalnaker also claims he should not be responsible for Ball's decision to settle any punitive damages claim. [R. 40]. These monies are an element of Ball's alleged damages, which would depend on the jury's determination as to Stalnaker's alleged malpractice.

the authorities discussed herein, this Court must find that a question of fact exists as to whether the trial court and/or the jury would have reached a different result had it heard the testimony of Officer Forsythe. *See Marrs v. Kelly*, 95 S.W.3d 856, 861 (Ky.2003) ("This is a question of fact, and the jury in the legal malpractice case must decide what the result would have been in the underlying case if the omitted evidence had been presented to a fair, reasonable, competent workers' compensation judge."); *Equitania Ins. Co. v. Slone & Garrett, P.S.C.*, 191 S.W.3d 552, 555 (Ky.2006) ("Whether an error of judgment is legal malpractice is a question of fact for the jury."). Both parties' argument on this point seems too tenuous for a ruling as a matter of law as even a "quantum of circumstantial evidence" can create a factual issue as to causation. *See Johnson*, 2003 WL 21769867, *2. There are contested issues of fact on whether Stalnaker's failure to present this omitted evidence was a substantial factor in causing the losses suffered by Ball. This Court cannot say, as a matter of law, that either Ball nor Stalnaker have presented sufficient facts to warrant summary judgment on this point. *See* Fed.R.Civ.P. 56(c)( judgment for the moving party is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.") *see also Browning v. Dep't of Army*, 436 F.3d 692, 695 (6th Cir.2006). As a result, the Court will deny both motions for summary judgment.

### III.

### CONCLUSION

Accordingly, pursuant to Fed.R.Civ.P. 56(c), and for the foregoing reasons, it is hereby **ORDERED** as follows:

1. The Defendant's Motion for Summary Judgment [R. 38] is **DENIED**;

2. The Plaintiff's Motion for Partial Summary Judgment [R. 39] is **DENIED**; and

3. Pursuant to 28 U.S.C. § 636(b)(1)(A) this matter is **REFERRED** to Magistrate Judge Robert E. Wier for the purpose of conducting a Status Conference to reschedule a Final Pretrial Conference and Jury Trial, and to conduct a Settlement Conference.